## 1047

EDWARD PINCKNEY ASSOCIATES, LTD., Respondent v. Glenn CAR-VER, Sunbelt Development Group, Inc. & TVCS Properties, Inc., Appellants.

(364 S. E. (2d) 473)

Court of Appeals

*Moss, Bailey, Dore & Kuhn,* Beaufort, *for appellants.*

*Ferrene & Bird,* Hilton Head, *for respondent.*

Nov. 23, 1987.

GARDNER, Judge:

Respondent Edward Pinckney Associates, Ltd., (EPA) brought this action for breach of contract against Sunbelt Development Group, Inc., (Sunbelt), TVCS Properties, Inc., (TVCS) and appellant Glenn Carver (Carver). The jury returned a verdict for EPA against Carver only; the trial court then assessed attorney fees against Carver. We reverse and remand.

The dispositive issue in this appeal is whether the trial court erred in failing to grant Carver's motion for a directed verdict and post trial motion for judgment n.o.v. The motions were made on the ground that as a matter of law Carver was not a party to the contract involved.

The resolution of this case hinges upon the construction of two written agreements. Both of these agreements were prepared by Edward Pinckney, an officer of EPA; each was couched as a letter; the manner by which the letters were addressed gives rise to the dispute as to the identity of the contracting parties.

On January 17, 1985, a letter was written on the stationery of EPA. The letter was entitled:

Edward Pinckney Associates Ltd.

*LETTER OF AGREEMENT TO BEGIN WORK*

(Interim Contract)

The letter was addressed thusly:

Mr. Glenn Carver
Sunbelt Development Group, Inc.
P.O. Box 1759
Beaufort, SC 29901

The letter related to work to be performed by EPA on a project referred to in the document as the "Charlotte Courtyard." It contained an authorization to begin work, a fee schedule, and terms relating to billing and payment for services. The last paragraph of the letter requested that the original "of this agreement" be signed and returned to EPA as an act of acceptance and notification for EPA to begin

work; it was signed by Edward Pinckney. Carver signed the acceptance on January 28, 1985. This instrument was signed by both Carver and Pinckney without any additional notation as to their official capacities with respect to their companies.

Subsequently on March 6, 1985, Mr. Pinckney prepared and forwarded to Mr. Carver a detailed contract in the form of a letter addressed similarly to the previous instrument in that Carver's name preceded Sunbelt Development Group, Inc. This letter stated, "It is our understanding that the (Owner) in this proposal is Sunbelt Development Group, Inc." "Sunbelt Development Group, Inc." was stricken by a line and in its place "TVCS Properties, Inc." was inserted in handwriting; this was done by Pinckney. The contract further provides, *inter alia:*

12. EXTENT OF AGREEMENT:
This Agreement represents the entire and integrated agreement between the Owner and the Architect and *supersedes all* prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and EP/A. [Emphasis added.]

Mr. Carver signed this agreement on April 11, 1985, again without noting his official capacity.

EPA was not paid for the services it rendered and brought this action against Carver, Sunbelt and TVCS. Apparently pursuant to pretrial agreement the two documents were introduced as evidence at the beginning of the trial. The trial judge ruled that the documents were ambiguous as to the person or legal entities with whom or which EPA contracted. Carver made timely objection to testimony by Pinckney as to who the client was on the grounds that the oral testimony violated the parol evidence rule; the objection was overruled. Carver also made a timely motion for directed verdict and a post verdict motion for judgment n.o.v. on the ground that, construing the two agreements together, Carver was, as a matter of law, not individually a party to the contract.

This court is faced with two written instruments which it

must consider to determine the rights of the parties. The applicable rule of contract construction was set forth in *Wilbur Smith Associates v. National Bank of South Carolina,* 274 S. C. 296, 263 S. E. (2d) 643 (1980). The rule is:

[W]here the instruments have not been executed simultaneously but relate to the same subject matter and have been entered into by the same parties, the transaction comprising the contract will be considered as a whole. This is true even though the transaction consumed more than one day; the date of the writings constituting such transaction is immaterial. Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect between the parties so that the whole agreement as actually made may be effectuated.

The above rule is well established. We would add but one thought and that is that under the above rule one contract draws contractual sustenance from the other. *See* 17 Am. Jur. (2d) *Contracts* Section 264 (1964) and the many annotated cases thereof (Several writings made as part of one transaction relating to the same subject matter may be read together as one instrument, and the recitals in one may be explained, amplified, or limited by reference to the other; indeed, the one draws contractual sustenance from the other.).

Applying the above rule, it is clear that the parties agreed that EPA's client was either Sunbelt or TVCS and not Carver individually. The second agreement expressly acknowledges EPA's understanding that it was dealing with one of the corporate entities, and because of the integration clause quoted above, that statement of understanding clarifies and, indeed, "supersedes" any uncertainty in the first agreement as to the identity of the responsible party. The construction of an unambiguous written contract is a question of law for the court. *Bishop Realty and Rentals, Inc. v. Perk, Inc.,* 292 S. C. 182, 355 S. E. (2d) 298 (Ct. App. 1987). The trial judge therefore erred in holding that the contract of the parties was ambiguous and we so hold.

We summarily reject EPA's contention that there was no consideration for the second agreement. There was a promise for a promise, an offer and acceptance. Valid consideration under the circumstances of this case existed and its existence is based upon elementary contract law.

Moreover, and contrary to EPA's contention that the second agreement was an attempt to modify the first with respect to the parties involved, the same individual parties effectuated both agreements. And we so hold.

Because the agreement was unambiguous, the trial judge erred in failing to grant Carver's motion for a directed verdict and we so hold. It follows that the assessment of attorney fees against Carver cannot stand since that award was based in part on his individual liability.

For the reasons stated, the judgment below is reversed and remanded with instruction that judgment be entered in accordance with this decision.

Reversed and remanded.

SANDERS, C. J., and GOOLSBY, J., concur.