### 2175

Mohammad S. MOSHTAGHI, Appellant v. THE CITADEL, The Military College of South Carolina, Respondent.

(443 S.E. (2d) 915)

Court of Appeals

*Allan R. Holmes* of *Gibbes & Holmes* and *Robert R. Black*, Charleston, *for appellant.*

*Stephen P. Groves* and *Shawn D. Wallace* both of *Young, Clement, Rivers & Tisdale*, and *M. Dawes Cooke, Jr.*, of *Barnwell, Whaley, Patterson & Helms*, Charleston, *for respondent.*

Heard March 4, 1994.

Decided April 25, 1994.

*Per Curiam:*

Mohammad S. Moshtaghi appeals from the trial court's grant of summary judgment in favor of The Citadel on all causes of action arising out of his termination as an adjunct professor. We reverse and remand for a trial on the merits on the slander cause of action and affirm as to all other causes of action.

## FACTUAL BACKGROUND

Moshtaghi was employed as an adjunct professor at The Citadel on a year-to-year basis from 1983 through October of 1990. He served as poll watcher for the election of the Board

of Visitors in 1986. Following the election, Moshtaghi expressed his belief that the election ballots were opened before they were actually counted. In August 1990, Moshtaghi testified before an Ad Hoc Committee set up by The Citadel to investigate allegations of wrongdoing surrounding the election of the Board of Visitors, which was formed after another Citadel professor, J.J. Mahoney, wrote a letter questioning election procedures. The Ad Hoc Committee issued a written report on September 5, 1990, dismissing the allegations. Moshtaghi's employment with The Citadel was also terminated on September 5, 1990.

Moshtaghi instituted a suit against The Citadel alleging causes of action for breach of contract, slander *per se*, fraudulent breach of contract, fraud, violation of public policy, breach of covenant of good faith and fair dealings, and for an injunction. The Citadel answered denying all claims, asserting Moshtaghi's employment was terminated due to his violation of his employment contract entered into with The Citadel for the 1990-1991 academic year. The court granted summary judgment in favor of The Citadel and this appeal followed. We affirm in part, reverse in part and remand.

## SCOPE OF REVIEW

Summary judgment is appropriate only when it is clear that there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Cafe Assoc., Ltd. v. Gerngross*, 305 S.C. 6, 406 S.E. (2d) 162 (1991). All reasonable inferences deducible from the testimony must be considered in the light most favorable to the nonmoving party. *Id.*

## DISCUSSION

Considering the facts and the reasonable inferences therefrom in the light most favorable to Moshtaghi, they reveal that at the time of his termination, Moshtaghi had taught in the business department at The Citadel on a full-time basis since 1983. During the school years beginning in 1989 and 1990, Moshtaghi accepted a position to teach certain courses at the Technical College of the Low Country (Tech) located in Beaufort, South Carolina. His employment contract with Tech stated he "is not performing and will not perform services for

compensation . . . from any other agency or institution of State Government, except with the approval of the college, the State Board for Technical and Comprehensive Education, and the State Budget and Control Board." Additionally, State Retirement System Regulations promulgated by the State Budget and Control Board implicitly prohibit an individual from having two full-time state jobs.[1]

On August 23, 1990 the personnel department at Tech brought the prohibition against dual employment to Moshtaghi's attention. On August 27, Moshtaghi brought the problem to the attention of Col. Martin, the Citadel's personnel officer, and Col. Bebensee, his Department Head at The Citadel. That same day Moshtaghi decided to resign from the job at Tech after Bebensee suggested his resignation would probably resolve the situation. On August 30, Moshtaghi tendered his resignation to Tech. That same day Bebensee delivered a letter to Moshtaghi stating "with the approval of Col. Metts,"[2] he was offering Moshtaghi "a temporary appointment as full-time adjunct professor" for the school year 1990-91. The letter also designated the courses Moshtaghi was to teach, stated his salary and gave him a specific time to accept the offer. Moshtaghi accepted the offer the same day.

On August 31, Col. Metts called Moshtaghi at home and told him he learned from Col. Martin of the dual employment situation and the false information submitted to Tech. Metts then made several derogatory statements about Moshtaghi, and informed him that as long as he was Dean of Undergraduate Students at The Citadel, he would see to it that Moshtaghi did not work there.

On September 3, Moshtaghi signed a Special Employment Contract. This contract restated some of the terms of the August 30 letter, but also contained additional terms, including a provision for termination by either party upon 30 days writ-

---

[1] South Carolina State Budget annd Control Board Regulation No. 19-702.09 (1983) provides:

    A. . . . [I]t is the policy of the Budget and Control Board:

        (3) That State employees may accept temporary, part-time employment of a consultative or technical nature with State agencies, provided that proir approval is obtained in each instance from the supervisor, the appropriate agency heads, and the Budget and Control Board.

[2] Col. Metts was the Dean of Undergraduate Students and had the authority to hire and fire Moshtaghi.

ten notice. It further provided that it is to be "construed in accordance with the laws of the State of South Carolina, including the Rules and Regulations of the State Budget and Control Board." This contract was signed by the "VP/Financial Management" on September 11, 1990. Moshtaghi had signed a similar contract, in addition to the letter agreement, for the school year 1989-90.

On September 5, Bebensee and Moshtaghi met with Metts at which time Metts informed Moshtaghi that his employment was terminated. That same day the Ad Hoc Committee appointed to investigate the 1986 Board of Visitors election controversy issued its report finding there were no irregularities in the election and criticizing those who had claimed such irregularities. Both Metts and Bebensee deny they knew about the existence of the Ad Hoc Committee on September 5, 1990.

After being notified of his termination, Moshtaghi asked to be permitted to teach his evening class on September 5, 1990. During the class, he told his student about his termination. When his students asked what they could do, he told them to go talk to General Watts, the president of The Citadel. News of Moshtaghi's termination quickly spread across the campus. When Cadet Lawsin, the Regimental Academic Officer, learned of the termination, he contacted two other cadets. The three of them, without Moshtaghi's knowledge, and on behalf of the senior class, the Corps of Cadets and the Business Department, went to see the president of The Citadel to discuss the reasons for the termination. General Watts informed the three cadets that Moshtaghi had done a "dishonorable" act and he was "a discredit to any Citadel man and all Citadel men." A petition was then circulated in an effort to get General Watts to meet with Moshtaghi, but General Watts refused to intervene. This suit followed.

## I. *BREACH OF CONTRACT*

On appeal, Moshtaghi alleges the trial court erred in granting summary judgment as to his action for beach of contract of employment, arguing that questions of material fact exist regarding the interpretation of several documents and oral representations made by both parties. We disagree.

Moshtaghi's principal argument is that the August 30th letter offer which was accepted by him constituted a complete contract and the September 3rd contract adding additional terms is not supported by consideration and thus is void. Under South Carolina law, two contracts executed at different times relating to the same subject matter, entered into by the same parties, are to be construed as one contract and considered as a whole. *Klutts Resort Realty, Inc. v. Down 'Round Development Corp.*, 268 S.C. 80, 88, 232 S.E. (2d) 20, 25 (1977). The date of the writings constituting the transaction is not material. *See Cafe Assoc., Ltd. v. Gerngross*, 305 S.C. 6, 10, 406 S.E. (2d) 162, 164 (1991). Moreover, where one of the contracts explains, amplifies or limits the other, those provisions will be given effect between the parties so that the whole agreement, as actually contracted by the parties, may be effectuated. *Edward Pinckney Assoc., Ltd. v. Carver*, 294 S.C. 351, 354, 364 S.E. (2d) 473, 474 (Ct. App. 1987). It is undisputed that in the past, Moshtaghi signed both a letter and a Special Employment Contract. We hold that there is no factual dispute. Rather, both the August 30th letter and the September 3rd contract constituted the agreement between Moshtaghi and The Citadel for the 1990-91 school term; thus, no additional consideration was required to support the September 3rd agreement because it was part of a transaction that was finalized on September 3, 1990.

Moshtaghi also argues that The Citadel's claim that it fired him because of his dual employment situation is pretextural because it knew of the dual employment matter at the time he signed both the August 30th and the September 3rd contract. Therefore, he argues, The Citadel waived his transgressions when it offered him a contract after it knew he had violated State Budget and Control Board Regulations. Because The Citadel knew of the dual employment arrangement at the time he accepted its offer for employment, he reasons, "the termination necessarily must have been motivated by his activities associated with his complaint regarding the Board of Visitors election procedures."

It is undisputed that high ranking officials at The Citadel knew as early as August 27th about the dual employment situation and could have seen to it that Moshtaghi was not offered employment for the 1990-91 school year. Certainly,

there appears to be no reason why the September 3rd contract should have been offered to him on September 3rd[3] or approved by The Citadel's finance officer on September 11, 1990. It is reasonably inferable that if dual employment was a concern to The Citadel, Moshtaghi would not have been offered the position as an adjunct professor for the 1990-1991 academic year after The Citadel was aware of his dual employment. Additionally, accepting Moshtaghi's testimony as true, both Col. Martin and Col. Bebensee led him to believe that resigning from the job at Tech would solve any dual employment problem and he relied on this assurance in resigning from the job at Tech on August 30, 1990.

Under the terms of their contract either party could terminate the contract upon 30 days written notice. Thus, the employment relationship between the parties was an at-will relationship with a 30-day notice requirement for termination.[4] *See* 53 Am. Jur. (2d) *Master and Servant* § 35 (1970). The general rule is that an employer may terminate an at-will employment relationship for any reason or no reason at all. *Culler v. Blue Ridge Elec. Co-op, Inc.* — S.C. —, 422 S.E. (2d) 91 (1992). However, an employee may not be terminated for exercising constitutional rights, S.C. Code Ann. § 16-17-560 (1976 & Supp. 1993),[5] nor for reasons against public policy. *See Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E. (2d) 213 (1985); *see also Culler, supra.*

While the evidence would appear to present a jury issue concerning whether the dual-employment issue was the motivation for the termination, Moshtaghi's own testimony obviates that conclusion. According to Moshtaghi, on August 31st Col. Metts called him and indicated he intended to fire him because of the dual employment matter. Metts denies he knew anything about the Ad Hoc Committee investigation then and Moshtaghi presented no evidence to support his claim that

---

[3] Moshtaghi testified he received this contract on September 3, 1990.

[4] There is no contention The Citadel violated the notice provisions of the contract.

[5] § 16-17-560. Assault or intimidation on account of political opinions or exercise of civil rights.

It is unlawful for a person . . . to discharge a citizen from employment or occupation . . . because of political opinions or the exercise of political rights and privileges guaranteed to every citizen by the Constitution and laws of the United States or by the Constitution and laws of this State.

Metts knew of the matter at the time. We therefore agree with the trial court that no evidence suggests a nexus between Metts' decision to terminate Moshtaghi and the Board of Visitors election investigation. Thus, no question of fact is presented on the issue of whether The Citadel fired Moshtaghi because of constitutionally protected speech.

## II. *VIOLATION OF PUBLIC POLICY*

Moshtaghi also alleges the Citadel violated public policy through "reprisal for the exercise of rights of [Moshtaghi] protected by the Constitution of the State of South Carolina and in derogation of the protections promised [Moshtaghi] by the [Citadel] as a predicate to his appearance before the afore-referenced Ad Hoc Committee of Alumni."

In *Ludwick*, our Supreme Court recognized a cause of action for discharge of an at-will employee where the discharge constituted a violation of public policy. *Id.* Under *Ludwick*, "the public policy exception is invoked when an employer requires at at-will employee, as a condition of retaining employment, to violate the law." *See Dockins v. Ingles Markets, Inc.,* 306 S.C., 496, 413 S.E. (2d) 18 (1992) (citing *Epps v. Clarendon County*, 304 S.C. 424, 405 S.E. (2d) 386 (1991)); *see also Culler*, 422 S.E. (2d) at 92-93 ("We believe that *Ludwick's* prohibition of retaliatory discharge in violation of clear mandate of public policy of this State extends at least to legislatively defined 'Crimes Against Public Policy'"). While Moshtaghi acknowledges his situation does not fall squarely within the *Ludwick* exception, he argues that the extension of *Ludwick* expressed in *Culler* would preclude The Citadel from terminating him because The Citadel would violate public policy by terminating him for exercising constitutionally protected free speech rights.

It is undisputed the South Carolina Constitution provides for freedom of speech, of assembly, and the right to petition the government for redress of grievances. *S.C. Const.*, Art. I, Sect 2. Those are the same protections guaranteed by the United States Constitution. *See City of Rock Hill v. Henry,* 244 S.C. 74, 76, 135 S.E. (2d) 718, 719 (1963), reversed on other grounds, 376 U.S. 776, 84 S.Ct. 1042, 12 L.Ed. (2d) 79 (1964).

As discussed above, we affirmed the trial court's finding that Moshtaghi was not terminated because of his involve-

ment with the Board of Visitors election controversy. Thus, there is no basis for the public policy claim, and we affirm the grant of summary judgment on this cause of action.

### III. *SLANDER*

Moshtaghi also contends the court erred in granting summary judgment as to his cause of action for slander *per se.* We agree. The record contains uncontradicted testimony of statements made by General Watts that infer impropriety or inadequacy in performing his job as a Professor. General Watts published statements that Moshtaghi's conduct had been "dishonorable," a discredit to any Citadel man and all Citadel men" and that is conduct was "illegal."[6] One of the cadets testified that he interpreted these statements as meaning that Moshtaghi "lied, cheated, stole and tolerated those who did." Although the cadets who testified formerly held Moshtaghi in the highest regard, the record contains testimony that Watts' comments negatively affected the opinion of other cadets.

The Citadel argues Moshtaghi's claim for slander *per se* is not well founded because the statements made by Watts were matters of opinion with factual basis in substantial truth. Additionally, it claims the statements were subject to a qualified privilege.

Whether or not Watts' characterization of Moshtaghi and his conduct under the circumstances of this case has a factual basis in substantial truth, and whether or not Watts' statements were privileged, we hold inappropriate matters for summary judgment. The employer-employee privilege does not protect unnecessary defamation. *Fulton v. Atlantic Coast Line R.R. Company*, 220 S.C. 287, 297, 67 S.E. (2d) 425, 429 (1951). The protection of a qualified privilege may be lost by the manner of its exercise. *Id.*

We find the inferences from the evidence create questions of fact. Even with a qualified privilege, General Watts' statements may have gone beyond the scope of that privilege. *Hamilton v. Miller*, 301 S.C. 45, 389 S.E. (2d) 652 (1990) (Even where there is no factual dispute, but a dispute as to the infer-

---

[6] We have, of course, resolved all conflicts in the evidence in favor of Moshtaghi. Likewise, all inferences have been viewed in the light most favorable to Moshtaghi.

ences and conclusions to be drawn from the facts, summary judgment should not be granted.). In any event, this case presents a situation where further inquiry into the facts is desirable to clarify application of the law. *Gardner v. Campbell*, 257 S.C. 209, 184 S.E. (2d) 700 (1971). As such, the court erred in granting summary judgment in favor of The Citadel as to Moshtaghi's slander cause of action.

Moshtaghi's remaining arguments on appeal have been considered and found to be manifestly without merit. We, therefore, affirm without addressing each issue individually. S.C. Code Ann. § 14-8-250 (Supp. 1992); Rule 220(b), SCACR.

Accordingly, the appealed order is reversed as to the slander cause of action and affirmed as to all other causes of action.

Affirmed in part, reversed in part, and remanded.