2306

Joanna LUDLAM, Respondent v. SCHOOL DISTRICT OF GREENVILLE COUNTY, Appellant.

(455 S.E (2d) 177)

Court of Appeals

510

*Kenneth L. Childs, David E. Dubberly* and *Allen D. Smith,*
all of *Childs & Duff,* Columbia, *for appellant.*

*Herbert W. Louthian,* of *Louthian & Louthian,* Columbia, and *Mary Layton Wells,* of *Scott & Roberts,* Florence, *for respondent.*

Heard Dec. 8, 1994; Reh. Den. Mar. 30, 1995.

CURETON, Judge:

Respondent, Joanna Ludlam was fired by the School District of Greenville County in June of 1991. She instituted this action against the Greenville County School District (the District) alleging violations of the South Carolina Whistleblower Act. S.C. Code Ann. § 8-27-10 et seq. (Supp. 1993). In its answer, the District asserted that Ludlam could not recover because: (1) her discharge was for legitimate, non-retaliatory reasons independent of her alleged "whistleblowing," and (2) she never reported or exposed any violation contemplated by the Whistleblower Act. The case was tried before a jury which returned a $150,000 verdict for Ludlam. The District appeals the trial court's denial of its motions for JNOV, a new trial, and a mistrial. We affirm.

Ludlam's relationship with the District began in 1974 when the District employed her as a part-time teacher's aide. After her position as a teacher's aide was eliminated in 1983, the District retained her as a psychological clerk for the Northwest Area.[1] As a psychological clerk, Ludlam was responsible for typing psychological reports and carrying out other clerical duties.

Ludlam's husband, Ross Ludlam, worked for the District as a teacher for 18 years until he was terminated for failure to return to work after Christmas vacation in 1988. Dr. Elizabeth C. Dubose, who served as Assist Superintendent of the Northwest Area from 1986 until 1992, participated in the decision to terminate Ludlam's husband. She testified that Ludlam's attitude towards her, as well as the District, changed for the worse after her husband's termination.

On May 9, 1989, DuBose reprimanded Ludlam because of excessive tardiness and dishonesty in her entries on the sign-out sheets. Later that same month, Ludlam's immediate supervisor, Jan Willis, made a written request to Dubose that

---

[1] The District is divided into four Administrative areas including the Northwest Area.

she transfer Ludlam to another position in the District. In this letter to DuBose, Willis indicated that Ludlam's frequent absences and disrespectful behavior were adversely affecting the work environment and interfering with the provision of student services. The decision was made not to transfer Ludlam at that time, but, instead, she was given the opportunity to improve her performance.

In September of 1989, Ludlam and her husband met with Rex Bailey and Jan Hughes, members of the Greenville County Taxpayer's Association, to discuss Mr. Ludlam's termination. During this meeting, Hughes and Bailey requested Ludlam provide them with "inside information" about mismanagement and wasteful spending within the District. Subsequently, Ludlam began reporting to them activities she suspected might be improper (e.g., parties, dinners, etc.).

In July 1990, Ludlam's new supervisor, Judith Hanna, conducted a performance evaluation of Ludlam for the 1989-1990 year.[2] She concluded that Ludlam's performance was deficient in three areas: (1) she was failing to notify her supervisors of planned absences and vacation plans; (2) she was returning late from lunch and altering the sign-out sheets; and (3) she was destroying office morale by complaining about supervisors and her job. This review was followed by several more reprimands of Ludlam. For each written reprimand, Ludlam pursued an employee grievance under District policy, and each time the decision of DuBose was affirmed.

Ludlam testified that the numerous disciplinary incidents were simply a form of harassment against her. In support of this contention, she testified that her desk and telephone were removed in the Summer of 1990, although part of her job was to take messages and reports over the telephone.[3]

Jan Hughes, a member of the Greenville County Taxpayers Association, testified that Ludlam mailed information to her probably 150-200 times and that she talked with the Ludlams at least three times per week. She further testified that it was her idea to request information and not Ludlam's. Mr. Ludlam testified he compiled the information gathered by Ludlam concerning spending from discretionary accounts and com-

---

[2] Hanna became Ludlam's immediate supervisor in the fall of 1989 when Jan Willis went on parental leave.

[3] She was the only person in the office without a telephone

pared it with the spending of three other district areas and found that the other area's spending much less.

On June 28, 1991, DuBose terminated Ludlam's employment, citing as reason for the termination the letters of reprimand issued to Ludlam regarding tardiness in returning from lunch breaks, misuse of leave time, misuse of office time and equipment, and blatant dishonesty. Ludlam then brought this action, alleging that her termination was in retaliation for her whistleblowing activities.

## DISCUSSION

On appeal from a jury verdict, the jurisdiction of this court extends only to the correction or errors of law. *Jones v. Sun Publishing Co.* 278 S.C. 12, 292 S.C. (2d) 23 (1982); *Hutson v. Cummins Carolinas,* 280 S.C. 552, 314 S.E. (2d) 19 (Ct App. 1984). A jury verdict should be reversed only if the record discloses no evidence which reasonably supports the verdict. *Id.* In deciding a motion for judgment notwithstanding the verdict, the trial court must view all evidence in the light most favorable to the nonmoving party; and if the evidence is susceptible of more than one reasonable inference, the motion must be denied. *Horry County v. Laychur,* 315 S.C. 364, 434 S.E. (2d) 259 (1993).

S.C. Code Ann. § 8-27-20 (Supp. 1991),[4] in effect in 1991, provided in pertinent part:

> No public body may discharge, otherwise terminate, or suspend from employment, demote, decrease the compensation of, discipline, otherwise punish, or threaten any employee of a public body whenever the employee reports a violation of any state or federal law or regulation . . . or whenever the employee exposes governmental criminality, corruption, waste, fraud, gross negligence, or mismanagement. . . . If the employee reports, exposes, or testifies as provided in this section, without probable cause, he may be terminated from employment by the public body.

---

[4] Since the personnel decision in this case occurred in June of 1991, the 1993 amendments to the Whistleblower Act are not applicable. *See* S.C. Code Ann. § 8-27-10 *et seq.* (Supp. 1993).

Section 8-27-40 (Supp. 1990) provided:

> Notwithstanding any action taken pursuant to this chapter, a public body any discharge, otherwise terminate, or suspend am employee for causes independent of those provided in Section 8-27-20.

The District argues the trial judge erred in failing to grant it's JNOV motion because the evidence presented at trial clearly established that Ludlam was discharged for legitimate, non-retaliatory reasons unrelated to her whistleblowing activities. Further, it claims that because Ludlam's whistleblowing claims were directed solely toward DuBose, a District administrator without final authority in employment decisions, there is a lack of evidence the District had any retaliatory motive in discharging Ludlam. In support of these contentions, the District refers this Court to evidence concerning several disciplinary actions taken against Ludlam. The District points to the following items of evidence, *inter alia*, produced at trial.

> 1) A Written Reprimand dated May 10, 1989 which admonished Ludlam for "being away from the office beyond the one hour allotted for lunch" and for failure to sign in and out for lunch for the period February 1989 through April 1989.
>
> 2) A Request for Transfer, signed by Jan Willis, head psychologist, dated May 17, 1989, addressed to DuBose, requesting Ludlam be transferred to another area in the District. In the request, Willis complained that Ludlam's frequent absences and disrespectful behavior were adversely affecting the work environment and interfering with the provision of student services.
>
> 3) Ludlam's 1990 Performance Evaluation, prepared by Judith Hanna, Ludlam's immediate supervisor, which stated Ludlam (a) failed to notify her supervisors of planned absences and vacation plans; (b) was frequently late returning from her lunch breaks; and (c) was destroying office morale by complaining about her supervisors and her work load.
>
> 4) Ludlam's July 1990 Absences. The School District asserts that although Ludlam took two sick days in July of

1990, it was "determined" that Ludlam was not in fact ill, but rather was out of town with her husband. The School District further asserts that Ludlam's absences were notorious and detrimental to office morale.

5) January 1991 Written Reprimand in which DuBose admonished Ludlam for being absent from work from January 7 to January 9 without proper notice and told Ludlam that she should, in the future, contact either DuBose, Hanna or a Mr. Gobel in advance of absences.

6) February 1991 Written Reprimand. This reprimand occurred incident to Ludlam's absence from work February 19 through February 22, 1991. Despite DuBose's instructions that Ludlam speak with specific staff members regarding absences, Ludlam called the area office and left a message with the custodian that she would not be in to work.

7) March 1991 Typewriter Transcript. As part of a police investigation of death threats against an elementary school principal, cartridges were removed from District typewriters to determine if the death threats were originating from a District office. Ludlam's typewriter cartridge was removed and transcribed at the direction of DuBose. DuBose found that Ludlam had used her typewriter on numerous occasion to type personal correspondence such as job applications for herself and family members. DuBose testified that when she met with Ludlam and inquired as to whether Ludlam had used her typewriter for personal business, Ludlam denied having done so. During that meeting, DuBose informed Ludlam that she could either resign or she would be terminated. Ludlam refused to resign and DuBose recommend her for termination.

8) Ludlam's Unsuccessful Grievances. The District notes that each time DuBose reprimanded Ludlam, Ludlam filed a grievance or complaint and each time DuBose's decision was upheld. It further notes that Ludlam also filed a complaint with the Office of Civil Rights based on age discrimination which was dismissed.

9) The District also refers this Court to extensive trial testimony regarding Ludlam's tardiness, absenteeism and argumentative behavior.

## I.

The District first asserts the above-outlined evidence constitutes an independent basis for its decision to terminate Ludlam pursuant to § 8-27-40 and, thus, its motion for JNOV should have been granted. We observe initially that because of the presumption contained in § 8-27-30, the burden is on the District to demonstrate that Ludlam was not discharged because she engaged in any of those activities described in § 8-27-20 and that it had an "independent" basis for terminating Ludlam. *McGill v. University of South Carolina,* 310 S.C. 224, 423 S.E. (2d) 109 (1992). We also note that Ludlam's evidence, if believed, rebuts much of the District's evidence concerning its claim of an independent basis for firing her. Affording Ludlam the benefit of all inferences and credibility determinations, we must reluctantly reject the District's argument. *See Gamble v. City of Manning,* 304 S.C. 536, 405 S.E. (2d) 829 (1991) (Where evidence was susceptible of more than one reasonable inference regarding the reason for employee's termination JNOV was properly denied).

## II.

In the same vein, the District argues because Ludlam's termination was appealed and affirmed by the District Superintendent and the Board after an independent review, the only reasonable inference from the evidence is that the District terminated Ludlam for legitimate, non-retaliatory reasons, and her claim of retaliation has no merit. We disagree.

DuBose was an agent and employee of the Board and any retaliation by DuBose is imputable to the Board. The fact that the Superintendent and the board reviewed the termination is simply another factor to be considered by the jury in determining the validity of Ludlam's retaliation claim. It would indeed be rare that a school board would engage in a retaliatory firing. Moreover, its approval of such a retaliatory firing by an employer does not have the effect of removing the taint of the firing.

## III.

The District next argues Ludlam's action fails because whenever exposed any governmental malfeasance as required by the statute. Specifically, the District asserts that Ludlam

could not have "exposed" DuBose's expenditures because the expenditures were legal, authorized, and a matter of public record. The District further argues that DuBose's activities were not the type of activity contemplated by the statute because review of the District's records would have revealed the legality of the activities. We disagree.

A suspected violation, reported with probable cause, is protected by the Act even if no wrongdoing is exposed. *McGill v. University of South Carolina*, 310 S.C. 224, 423 S.E. (2d) 109 (1992). We agree with Ludlam that waste would not be readily apparent to an individual reviewing a copy of the District's budget without the assistance of a District employee. Moreover, we note that Ludlam did not begin her whistleblowing activities on her own initiative, but rather at the request of a member of the Greenville County Taxpayer's Association who briefed her on the kind of information needed to show waste and mismanagement. Therefore, we hold Ludlam presented ample evidence that her reporting activities were made in good faith and with probable cause to believe her actions were protected under the Act.

## IV.

The District also asserts that DuBoses's disciplinary actions could not have taken in retaliation for Ludlam's whistleblowing because DuBose had no knowledge of the whistleblowing until after Ludlam's termination. Hence, the termination could not have been the result of her whistleblowing activities. In response to this contention, Ludlam argues that although there is no direct proof of knowledge by DuBose, the record is sufficient for the jury to have inferred such knowledge by DuBose, the record is sufficient for the jury to have inferred such knowledge. Despite the fact we can locate no case which addresses the issue of notice under the Act, the District notes that this court in recent case of *Moshtaghi v. The Citadel*, 314 S.C. 316, 443 S.E. (2d) 915 (Ct. App. 1994), considered the question of knowledge and retaliatory motive in another context. In *Moshtaghi*, we affirmed the grant of summary judgment to The Citadel in a case alleging a retaliatory discharge in violation of an employee's constitutional right of free speech. This court concluded that because no issue of fact was presented showing knowledge by The

Citadel of the protected speech at the time of the firing no "nexus between [The Citadel's] decision to terminate Mosh-taghi" and his exercise of free speech had been shown and, consequently, summary judgment was proper.

From this backdrop, we considered the circumstantial evidence in the light most favorable to Ludlam to determine whether the evidence lends itself to a reasonable inference that DuBose had knowledge of Ludlam's whistleblowing activities at the time of firing. *Gamble*, 405 S.E. (2d) at 830. Ludlam notes that the typewriter cartridge which DuBose had transcribed contained a listing of expenditures for parties and other spending of which she was critical. She further points out that DuBose was aware of a letter she wrote to a school Board member complaining of harassment by DuBose and DuBose's acknowledgement that the Board member talked to her about Ludlam in November 1990. We observe this same Board member testified Ludlam talked to him about what she thought was "misappropriation" in the Northwest Area and that "there was a discussion of those—that information that she gave [among Board members]." Further, Jan Hughes from the Taxpayer's Association testified she passed this information on to several public officials to include another Board member who "went through their closets one time and saw all their parties [sic] goods. . . ." Ludlam also notes that the circumstantial evidence of the moving of her office, removing her telephone, restricting her use of the office copier and microfiche machine and generally isolating her in the office, is evidence from which the jury could have inferred knowledge by DuBose of her whistleblowing activities. Finally, we observe from Ludlam's testimony that she talked to reporters in the Spring of 1991 and that a report made a Freedom of Information request for DuBose's accounts. While none of these activities in isolation gives rise to a inference of notice, we are convinced that, collectively, they produce inference sufficient to submit the issue of notice to the jury.

## V.

The District next asserts that the jury verdict was excessive inasmuch as Ludlam's lost wages were only $15,800 and, thus, the jury necessarily based its award on improper considerations such as sympathy, passion and

prejudice.

The granting of a new trial on the ground of an excessive verdict is within the discretion of the trial judge whose decision will not be disturbed on appeal unless the verdict is "wholly unsupported by the evidence." *Perry v. Green*, 313 S.C. 250, 252, 437 S.E. (2d) 150, 153 (Ct. App. 1993); *see Hall v. Palmetto Ent.* 282 S.C. 87, 317 S.E. (2d) 140 (1984) (Jury's verdict will not reversed on appeal unless the only reasonable inference that can be drawn from the evidence does not support factual findings implicity in verdict). In support of the jury's award, Ludlam points to trial testimony showing in addition to her lost wages, her loss of insurance, severe emotional distress, embarrassment, depression, lack of sleep and the fact that she was forced to move from her home in Greenville into a travel trailer in Lexington County for a period of time. In light of this evidence, we do not think that the amount of the jury's award is wholly unsupported by the record.

## VI.

Finally, the District argues that a juror's alleged contact with a reporter should have resulted in a mistrial.

We disagree. During the hearing on the District's motion for mistrial, DuBose and another District official testified they observed a juror walking and talking with a reporter who was employed by a newspaper "which has an editorial policy strongly opposed to the District administration." The juror testified that no such contact had occurred and the trial judge allowed him to deliberate with the other jurors. After the jury returned its verdict, the District renewed its motion for a mistrial on the ground of jury tampering. The trial judge again heard testimony regarding the contact. Although an office of the court testified that he thought he saw a juror talking to the reporter, the reporter, the juror, and another juror again denied any such contact.

The determination of whether a person has a coercive effect on a juror because of juror contact is a matter addressed to the sound discretion of the trial judge considering the impact of the communications on the jury's deliberations. *Blake v. Spartanburg General Hospital*, 307 S.C. 14, 413 S.E. (2d) 816 (1992). Having reviewed the record, in-

cluding testimony concerning the alleged contact,we find no indication the alleged contact influenced the jury in any way. We conclude thee was no abuse of discretion in the trial judge's denial of the District's motion for a mistrial.

## CONCLUSION

In conclusion, it appears to us from a review of the record that Ludlam's attitude toward her work and her coworkers changed after her husband was fired by the District. Were this court able to make factual determinations in this appeal we would hold the District had good cause to terminate Ludlam independent of any of her so called whistleblowing activities. However, it is clear that the evidence and inferences to be drawn from the evidence from which the jury made factual determinations are disputed. Such determinations were solely for the jury who heard, weighed and evaluated the evidence. We have no authority to pass upon the veracity of witnesses and fashion a remedy according to what we think is the weight of the evidence. *McGill*, 423 S.E. (2d) at 111. Under the facts of this case, the jury may well have concluded that although Ludlam was not a model employee, the District had tolerated her lackadaisical and intolerant behavior and but for DuBose's discovery of her whistleblowing activities, she would not have been fired.

For the foregoing reasons, the trial court's decision is

Affirmed.

GOOLSBY, J. and HOWARD, Acting Judge, concur.