# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

City of Hardeeville, Appellant,

v.

Jasper County, South Carolina; Jasper County Treasurer; and Jasper County Auditor, Respondents,

AND

Jasper County, South Carolina, Cross-Plaintiff,

Verna Garvin, in her official capacity as Jasper County Treasurer, Cross-Plaintiff,

and Monica Wilson, in her official capacity as Jasper County Auditor, Cross-Plaintiff

v.

City of Hardeeville, Nickel Plate Road, LLC, and Beaufort County, South Carolina, Cross-Defendants.

Appellate Case No. 2022-001266

_____

Appeal from Jasper County
H. Steven DeBerry IV, Circuit Court Judge

_____

Opinion No. 6071
Heard June 3, 2024 – Filed July 17, 2024

_____

**AFFIRMED**

_____

Michael Enrico Kozlarek and John Marshall Mosser, both of King Kozlarek Law LLC, of Greenville, for Appellant.

Thomas Allan Bendle, Jr., of Howell Gibson & Hughes, PA, of Beaufort, for Respondent Jasper County Auditor.

Walter Hammond Cartin and Jeffrey Evan Phillips, both of Parker Poe Adams & Bernstein, LLP, of Columbia, for Respondent Jasper County.

---

**GEATHERS, J.:**  This appeal arises out of a dispute related to levying taxes on a multi-county business park (MCBP) and the distribution of revenue pursuant to an MCBP agreement between Beaufort and Jasper counties.  The City of Hardeeville appeals the circuit court's grant of partial summary judgment in favor of Jasper County, the Jasper County Auditor, and the Jasper County Treasurer (collectively, Jasper County Entities).  The City of Hardeeville argues the circuit court erred in finding that: (1) the MCBP agreement between Beaufort and Jasper counties was valid and in compliance with constitutional and statutory law; (2) additional discovery was not necessary; (3) Hardeeville's consent to the agreement was not required; and (4) all property in the MCBP, including the annexed property, is exempt from all ad valorem taxation.  We affirm.

## FACTS/PROCEDURAL HISTORY

This dispute centers on the levying of ad valorem taxes and the distribution of revenue generated by Nickel Plate MCBP following Hardeeville's annexation of a portion of Nickel Plate MCBP property.  In December 1999, Jasper and Beaufort counties drafted an agreement to jointly develop Nickel Plate MCBP (the Park Agreement).  Nickel Plate MCBP consisted of three tracts of land covering 318.961 acres.  At the time of the park's creation, none of the tracts were located in whole or in part in Hardeeville, a city located almost entirely in Jasper County.

The Park Agreement, in relevant part, provided that property located in Nickel Plate MCBP was exempt from ad valorem taxes for the duration of the agreement and instead of ad valorem taxes, owners or lessees of park property would pay fee in lieu of tax (FILOT) payments.  The Park Agreement also provided that all revenue generated by Nickel Plate MCBP through FILOT payments would be allocated between the two counties—99% to the Site Location County and 1% to the Partner

County.[1]  With regard to Jasper County, the Park Agreement provided the revenue generated from FILOT payments would be "distributed by Jasper County to the political subdivisions of Jasper County . . . in accordance with an ordinance adopted by Jasper County."  Jasper County Council executed the Park Agreement on April 10, 2000.

When the Park Agreement was executed, Jasper County Council had already enacted an ordinance in February 2000 in which it authorized the development of Nickel Plate MCBP and incorporated the Park Agreement by reference.  The February 2000 Ordinance provided:

> SECTION IX.  Jasper County hereby designates that the distribution of the fee-in-lieu of ad valorem taxes pursuant to the [Park] Agreement actually received by Jasper County for [Nickel Plate MCBP] premises be paid to each of the taxing entities in Jasper County which [levies] an ad valorem property tax in any of the areas comprising [Nickel Plate MCBP] in the same percentage as is equal to that taxing entity's percentage of the millage rate being levied in the then current tax year for property tax purposes, provided that the County may, from time to time, by ordinance, amend the distribution of the fee-in-lieu of tax payments to all taxing entities.  A portion of the fee-in-lieu of ad valorem taxes which Jasper County receives pursuant to the [Park] Agreement for [Nickel Plate MCBP] premises may be, from time to time and by ordinance of Jasper County Council or its successor, designated for the payment of special source revenue bonds.

In April 2001, Jasper County Council enacted General Bond Ordinance No. 01–04 that authorized the issuance of one or more series of special source revenue bonds not to exceed $20,000,000 and authorized payment of the bonds secured by

---

[1] The Park Agreement did not specifically define which county was the Site Location County and which county was the Partner County; however, at the time of execution, Nickel Plate MCBP comprised three tracts located exclusively in Jasper County.

earmarking 40% of net fee payments[2] under the Park Agreement.  The General Bond Ordinance expressly amended Section IX to read:

> Jasper County hereby directs that, of the fee-in-lieu of ad valorem taxes pursuant to the [Park] Agreement actually received by Jasper County for [Nickel Plate MCBP] premises, one (1%) percent of such fees be paid to Beaufort County.  Of the remainder of such fees, forty (40%) percent shall be designated for the payment of special source revenue bonds, and the balance shall be paid to each of the taxing entities in Jasper County which [levies] an ad valorem property tax in any areas comprising [Nickel Plate MCBP] in the same percentage as is equal to that taxing entity's percentage of the millage rate being levied in the then current tax year for property tax purposes.

At the time the General Bond Ordinance was passed, the only taxing entities in the areas comprising Nickel Plate MCBP were Jasper County and the Jasper County School District.  The ordinances and Park Agreement were recorded with the Jasper County Register of Deeds shortly after their respective enactment and execution.

Jasper County subsequently authorized the issuance of $14,000,000 in special source revenue bonds.  Nickel Plate Road, LLC is the holder of those special source revenue bonds.

In August 2006, more than six years after the Park Agreement was executed, the owner of a portion of Nickel Plate MCBP property—specifically tract III, covering 106.75 acres—petitioned Hardeeville to annex the property.  Hardeeville granted the petition and annexed the property into its jurisdictional limits.  Since annexation, the total millage levy—an ad valorem tax—on the annexed property has been assessed and paid in its entirety to Hardeeville.  Two years after annexation, Jasper County Entities agreed to collect Hardeeville's taxes and fees, including for the annexed property, and to distribute all the revenues generated to Hardeeville.

---

[2] The General Bond Ordinance defined net fee payments as the revenues Jasper County received and retained pursuant to the Park Agreement from FILOT payments remaining after payment of Beaufort County's allocation of 1% of revenues from FILOT payments Jasper County received.

However, on November 9, 2020, Jasper County sent a letter to Hardeeville stating that it had discovered Hardeeville's collection and retention of the total millage levy with no portion going to Beaufort County or payment of the special source revenue bonds. Jasper County sought to reconcile the error but sought reimbursement for only the portion of overpayments that accumulated during the immediately preceding three years. Hardeeville responded to the November 2020 letter stating it was not a party to any agreement related to Nickel Plate MCBP and was not bound by any of Jasper County's obligations.

Hardeeville commenced the underlying action against Jasper County Entities, seeking (1) a declaratory judgment with respect to its authority to levy and collect taxes and retain tax revenue without regard to the Park Agreement and (2) injunctive relief preventing Jasper County Entities from collecting the alleged overpayment or negatively impacting Hardeeville's ability to impose a tax levy on the annexed property. Jasper County Entities answered and filed a cross-complaint seeking a declaratory judgment that all park property was subject to the Park Agreement and alleging unjust enrichment from Hardeeville's collection and retention of the total millage levy.[3] In their cross-complaint, Jasper County Entities alleged Hardeeville had received an overpayment for current and prior years amounting to $463,226.13.

Jasper County Entities subsequently sought partial summary judgment on the following declaratory issues: (1) the rights of the parties with regard to the revenue generated from park property; (2) whether Nickel Plate MCBP is exempt from ad valorem taxes; (3) whether the ad valorem taxes on Nickel Plate MCBP were converted to FILOT payments as a matter of law; and (4) whether the revenue generated by the park must be distributed in the manner specified in the Park Agreement. Hardeeville filed a motion for summary judgment in which it asserted the circuit court could find as a matter of law that the Park Agreement was invalid and not binding on Hardeeville.

The circuit court granted partial summary judgment in favor of Jasper County Entities and denied Hardeeville's motion for summary judgment. The circuit court determined the Park Agreement was valid under article VIII, section 13(D) of the South Carolina Constitution and satisfied subsection 4-1-170(A)(3) of the South Carolina Code (2021), which requires the inclusion of certain provisions in an

---

[3] Nickel Plate Road joined the action as a cross-defendant due to its interest in the litigation as the holder of the special source revenue bonds. Nickel Plate Road did not file any briefs with this court and is not involved in the appeal.

agreement between multiple counties for the development of an MCBP. The circuit court found that the Park Agreement satisfied subsection 4-1-170(A)(3) through its reference to the ordinances and that no legal authority suggested any impropriety in an incorporation by reference in an MCBP agreement. Further, the circuit court determined Hardeeville's consent to the Park Agreement was not required because section 4-1-170(C) of the South Carolina Code (2021) requires consent of a municipality only if an MCBP would encompass all or part of the municipality *at the time the MCBP is created*. Lastly, the circuit court found that because the Park Agreement is valid and Hardeeville's consent was not required, all Nickel Plate MCBP property, including the annexed property, is exempt from ad valorem taxation and the revenue from FILOT payments must be distributed in accordance with the Park Agreement.

Hardeeville filed a Rule 59(e), SCRCP, motion, which the circuit court denied. This appeal followed.

## ISSUES ON APPEAL

I.  Did the circuit court err in finding the Park Agreement satisfied subsection 4-1-170(A)(3) and was valid under article VIII, section 13(D)?

II.  Did the circuit court err in finding that discovery was not necessary for determining that the Park Agreement was valid as a matter of law?

III.  Did the circuit court err in finding that Hardeeville's consent to the Park Agreement was not required?

IV.  Did the circuit court err in finding that *all* property in the park, including the annexed property, is exempt from all ad valorem taxation?

## STANDARD OF REVIEW

This court reviews the grant of a summary judgment motion under the same standard applied by the circuit court pursuant to Rule 56(c), SCRCP. *Jackson v. Bermuda Sands, Inc.*, 383 S.C. 11, 14 n.2, 677 S.E.2d 612, 614 n.2 (Ct. App. 2009). Summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. In determining whether there are any genuine issues of material fact, the court must view all ambiguities and

reasonable inferences from the evidence "in the light most favorable to the non-moving party." *Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001). Further, "[w]hen a circuit court grants summary judgment on a question of law, [appellate courts] will review the ruling de novo." *Wright v. PRG Real Est. Mgmt., Inc.*, 426 S.C. 202, 212, 826 S.E.2d 285, 290 (2019).

## LAW/ANALYSIS

### I. Constitutional and Statutory Compliance

Hardeeville argues the circuit court erred in finding that the Park Agreement was valid and satisfied constitutional and statutory requirements because (1) the constitution did not require any governmental entity other than the participating counties to be bound by the Park Agreement and (2) the Park Agreement did not comply with the statutory requirement to specify the manner in which revenues received by Jasper County would be distributed. We disagree.

Article VIII, section 13(D) of the South Carolina Constitution provides:

> *Counties* may jointly develop an industrial or business park *with other counties* within the geographical boundaries of one or more of the member counties. The area comprising the parks and all property having a situs therein is exempt from all ad valorem taxation. The owners or lessees of any property situated in the park shall pay an amount equivalent to the property taxes or other in-lieu-of payments that would have been due and payable except for the exemption herein provided. The participating counties shall reduce the agreement to develop and share expenses and revenues of the park to a written instrument *which is binding on all participating counties*. Included within expenses are the costs to provide public services such as sewage, water, fire, and police protection. Notwithstanding the above provisions of this subsection, before a group of member counties may establish an industrial or business park as authorized herein, the General Assembly must first provide by law for the manner in which the value of the property in the park will be considered for purposes of bonded indebtedness of political subdivisions and school districts and for purposes

of computing the index of taxpaying ability pursuant to any provision of law which measures the relative fiscal capacity of a school district to support its schools based on the assessed valuation of taxable property in the district as compared to the assessed valuation of the taxable property in all school districts of this State.

(emphases added). As required by article VIII, section 13(D), the legislature adopted the correlating statute that provides: "The written agreement entered into by the participating counties must include provisions [that]:

(1) address sharing expenses of the park;

(2) specify by percentage the revenue to be allocated to each county;

(3) *specify the manner in which revenue must be distributed to each of the taxing entities within each of the participating counties.*

S.C. Code Ann. § 4-1-170(A) (2021) (emphasis added). Hardeeville concedes the Park Agreement met the requirements of the first and second subsections but asserts the agreement failed to comply with the third.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Id.*

"The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties and, in determining that intention, the court looks to the language of the contract." *First S. Bank v. Rosenberg*, 418 S.C. 170, 180, 790 S.E.2d 919, 925 (Ct. App. 2016) (quoting *Watson v. Underwood*, 407 S.C. 443, 454–55, 756 S.E.2d 155, 161 (Ct. App. 2014)). "If the contract's language is clear and unambiguous, the language alone determines the contract's force and effect. When a contract is unambiguous, a court must construe its provisions according to the terms the parties used as understood in their plain, ordinary, and popular sense." *Ashley River Props. I, LLC v. Ashley River Props. II, LLC*, 374 S.C. 271, 280, 648 S.E.2d 295, 299 (Ct. App. 2007) (citation omitted). "[O]ne contract may incorporate

another by reference . . . ." *Shaw v. E. Coast Builders of Columbia, Inc.*, 291 S.C. 482, 484, 354 S.E.2d 392, 392 (1987). "[W]here the instruments have not been executed simultaneously but relate to the same subject matter and have been entered into by the same parties, the transaction comprising the contract will be considered as a whole." *Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.*, 268 S.C. 80, 88, 232 S.E.2d 20, 24 (1977). "This is true even though the transaction consumed more than one day; the date of the writings constituting such transaction is immaterial." *Id*.

The plain language of article VIII, section 13(D) provides that to develop an MCBP, the participating counties must execute a written agreement "[that] is binding on all participating counties." The section is silent on the binding effect of an MCBP agreement on municipalities with territory encompassed in an MCBP. However, section 4-1-170(C) clarifies the role of municipalities, providing that, "If the industrial or business park encompasses all or a portion of a municipality, the counties must obtain the consent of the municipality prior to the creation of the multi-county industrial park." Section 4-1-170(C) and article VIII, section 13(D), read together, evince that a municipality encompassed in an MCBP is bound by the park agreement if the municipality consents *prior* to the agreement's execution. If a municipality is not encompassed within the situs of the MCBP, then it stands to reason that no such consent is required to execute a park agreement. Further, the limitation of when municipal consent is necessary—prior to an MCBP's creation—demonstrates the legislature's intent that once a park agreement is executed, the MCBP property become exempt from all ad valorem taxes and that the park agreement control the levying, collection, and distribution of revenue generated by the MCBP, regardless of any future annexation of park property into municipalities. *See Tilley v. Pacesetter*, 333 S.C. 33, 40, 508 S.E.2d 16, 20 (1998) (per curiam) (stating that if the "legislature had intended [a] certain result in a statute, it would have said so").

No part of Hardeeville's territory was encompassed in any portion of Nickel Plate MCBP at the time the Park Agreement was executed. In fact, it was not until approximately six years after the execution of the Park Agreement that Hardeeville annexed a portion of Nickel Plate MCBP. Thus, there was no obligation at any point for Jasper County to consult Hardeeville and gain its consent with regard to the Park Agreement. Nickel Plate MCBP property is subject to the Park Agreement for the duration of the agreement, regardless of annexation.

Further, the Park Agreement complies with the requirement to specify distribution of revenue under subsection 4-1-170(A)(3) because the Park Agreement

properly incorporated by reference the February 2000 and General Bond ordinances. *See Shaw*, 291 S.C. at 484, 354 S.E.2d at 392 ("[O]ne contract may incorporate another by reference . . . ."); *Klutts Resort Realty, Inc.*, 268 S.C. at 88, 232 S.E.2d at 24 ("[W]here the instruments have not been executed simultaneously but relate to the same subject matter and have been entered into by the same parties, the transaction comprising the contract will be considered as a whole."); *cf. Ellie, Inc. v. Miccichi*, 358 S.C. 78, 92, 594 S.E.2d 485, 493 (Ct. App. 2004) ("Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect between the parties so that the whole agreement as actually made may be effectuated." (quoting *Edward Pinckney Assocs., Ltd. v. Carver,* 294 S.C. 351, 354, 364 S.E.2d 473, 474 (Ct. App. 1987))); *Ellie, Inc.*, 358 S.C. at 93, 594 S.E.2d at 493 ("This rule applies even where the parties are not the same, if the several instruments were known to all the parties and were delivered [at] the same time to accomplish an agreed purpose."). The February 2000 Ordinance and the General Bond Ordinance specifically tied revenue distribution to the millage rate formulated in the current tax year. Moreover, the General Bond Ordinance provided a clear order for distribution of revenues—first 1% of revenues paid to Beaufort County and then the remainder of revenues split into 40% for payment of special source revenue bonds and the balance for taxing entities in Jasper County.

Accordingly, we affirm the circuit court's finding that the Park Agreement was valid and complied with article VIII, section 13(D) and subsection 4-1-170(A)(3).

## II.   Discovery

Hardeeville contends the circuit court erred in finding additional discovery was not necessary to render partial summary judgment. Hardeeville's argument centers around Jasper County Entities' failure to challenge the annexation and subsequent tax collection for more than a decade. We disagree.

The issue before the circuit court was the partial summary judgment regarding the validity of the Park Agreement and whether the annexed property can be subject to ad valorem tax. Hardeeville offered no examples of additional discovery that would offer guidance on the contractual and statutory interpretation questions at play in the partial summary judgment motion. *See Dawkins v. Fields*, 354 S.C. 58, 69, 580 S.E.2d 433, 439 (2003) (noting that a party opposing a summary judgment motion on the ground it has not had "a full and fair opportunity to complete discovery. . . . must demonstrate the likelihood that further discovery will uncover

additional relevant evidence").  Further, Hardeeville cannot credibly argue additional discovery was necessary when it simultaneously filed a motion for summary judgment arguing the circuit court could find as a matter of law the Park Agreement was invalid.  *See Buonaiuto v. Town of Hilton Head Island*, 440 S.C. 144, 150, 889 S.E.2d 625, 628–29 (Ct. App. 2023) ("Where cross[-]motions for summary judgment are filed, the parties concede the issue before us should be decided as a matter of law." (quoting *Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011))).

Accordingly, we affirm the circuit court's finding that additional discovery was unnecessary to determine the issues in the partial summary judgment motion.

### III.   Consent

Hardeeville argues the circuit court erred in finding Hardeeville's consent to the Park Agreement was not required because (1) neither the constitution nor section 4-1-170(A) contemplates binding municipalities to a multi-county park agreement and (2) Jasper County failed to raise any concerns about Hardeeville's ability to levy and collect taxes during annexation.  We disagree.

As discussed above, section 4-1-170 of South Carolina Code (2021) and article VIII, section 13(D), read together, require counties to gain the consent of municipalities encompassed in the park *prior* to execution of the Park Agreement. After execution of the Park Agreement, the county is not required to gain the consent of a municipality that annexes a portion of park property, and the park agreement in place continues to govern the collection and distribution of revenue generated by the MCBP.  *See Horry Cnty. Sch. Dist. v. Horry County*, 346 S.C. 621, 630–31, 552 S.E.2d 737, 741–42 (2001) ("Article VIII, [section] 13(D) and [section] 4-1-170 exempt property in MCBPs from *ad valorem* taxation and permit the county to enter agreements specifying how MCBP revenue will be distributed. . . .  [Section] 4-1-170[(A)](2) specifically allocates that revenue to the county, not to any another taxing entity."); S.C. Code Ann. § 4-1-170(C) ("If the industrial or business park encompasses all or a portion of a municipality, the counties must obtain the consent of the municipality *prior* to the creation of the multi-county industrial park." (emphasis added)).

As discussed above, no part of Hardeeville's territory was encompassed in whole or in part in Nickel Plate MCBP at the time of its creation; thus, its consent was not required to execute the Park Agreement.  After Nickel Plate MCBP's creation, the Park Agreement continues to control regardless of annexation.

Accordingly, we affirm the circuit court's finding that Hardeeville's consent to the Park Agreement was not required.

## IV.    Exemption from the Ad Valorem Taxation

Hardeeville argues the circuit court erred in failing to find that article VIII, section 13(D) and section 4-1-170, read with South Carolina's statute regarding annexation by petition, reflect the legislature's intent to allow a municipality to levy and collect ad valorem taxes and fees on annexed property even if the property is located in a pre-existing MCBP.  Hardeeville asserts it would violate public policy to allow a municipality to annex property and provide services to the annexed property, yet not allow it to collect any tax revenue from the property—in contradiction to the plain language of the annexation statute.  We disagree.

Section 5-3-150(1) of the South Carolina Code (2004) provides that:

> Any area or property which is contiguous to a municipality may be annexed to the municipality by filing with the municipal governing body a petition signed by seventy-five percent or more of the freeholders . . . owning at least seventy-five percent of the assessed valuation of the real property in the area requesting annexation.

Under this method of annexation,

> [P]roperty owned by a governmental entity and leased to any other entity pursuant to a fee in lieu of taxes transaction . . . is considered to have an assessed valuation equal to the original cost of the real property . . . .  For purposes of this section, the lessee of real property *pursuant to a fee in lieu of taxes transaction* . . . is the freeholder with respect to the property.

S.C. Code Ann. § 5-3-150(4) (2004) (emphasis added).  Finally,

> For purposes of [annexation by petition signed by all or seventy-five percent of the freeholders], *any real property included within a multicounty park under Section 4-1-170*

*is considered to have the same assessed valuation that it would have if the multicounty park did not exist.* Notwithstanding any other provision of law, any real property which is or has been included within a multicounty park under Section 4-1-170 and title to which is held by the State of South Carolina, only may be annexed with prior written consent of the State of South Carolina, and when title to real property in the park is held by a political subdivision of the State, the property may be annexed only with prior written consent of the governing body of the political subdivision holding title.

S.C. Code Ann. § 5-3-150(5) (2004) (emphasis added).

The annexation by petition statute—section 5-3-150—clearly contemplates a municipality annexing property subject to an MCBP agreement, yet it does not allow a municipality's annexation to disturb a preexisting MCBP agreement's distribution of revenue scheme. Sections 5-3-150(4) and (5) consider only whether the lessee of a property within an MCBP constitutes a freeholder for annexation purposes and how to calculate the assessed valuation of MCBP property to satisfy the statutory requirement that the petition be signed "by seventy-five percent or more of the freeholders . . . *owning at least seventy-five percent of the assessed valuation of the real property in the area requesting annexation*." (emphasis added). Reading the annexation statute, article VIII, section 13(D), and section 4-1-170 together, we conclude the legislature clearly was aware that property in MCBPs could be annexed into a municipality's jurisdiction subsequent to creation of a park agreement and yet chose not to disturb existing park agreements when property in the park was annexed. *See Tilley*, 333 S.C. at 40, 508 S.E.2d at 20 (stating that if the "legislature had intended [a] certain result in a statute, it would have said so").

Here, the existing Park Agreement controls the distribution of revenue generated by Nickel Plate MCBP following Hardeeville's annexation, and the participating counties, not other taxing entities, retained the authority to allocate revenue generated from the MCBP. *Horry Cnty. Sch. Dist.*, 346 S.C. at 630–31, 552 S.E.2d at 741–42 ("Article VIII, [section] 13(D) and [section] 4-1-170 exempt property in MCBPs from *ad valorem* taxation and permit the county to enter agreements specifying how MCBP revenue will be distributed. . . . [Section] 4-1-170[(A)](2) specifically allocates that revenue to the county, not to any another taxing entity."). Accordingly, we hold the circuit court did not err in finding Nickel Plate MCBP property, regardless of whether the property was subsequently annexed

by a municipality, was exempt from ad valorem taxes and the Park Agreement controlled the collection and distribution of revenue generated by Nickel Plate MCBP.

## CONCLUSION

Based on the foregoing, the circuit court's order is

**AFFIRMED.**

**HEWITT and VINSON, JJ., concur.**