20347

KLUTTS RESORT REALTY, INC., et al., Respondents, v. DOWN-'ROUND DEVELOPMENT CORPORATION et al., Appellants.

(232 S. E. (2d) 20)

*Messrs. Irvine F. Belser, Jr.,* and *Weston Adams,* of Columbia, *for Appellants,*

*Messrs. Bellamy, Rutenberg, Copeland, Epps, Gravely &
Bowers,* of Myrtle Beach, *for Respondents,*

*Messrs. Irvine F. Belser, Jr.,* and *Weston Adams,* of Columbia, *for Appellants, in Reply,*

January 13, 1977.

RHODES, Justice:

This is an appeal from an Order decreeing specific performance under a contract to purchase real property. We affirm.

This cause came on for trial before the court sitting without a jury on December 17, 1974. Under their amended Complaint, the plaintiffs sought a judgment which would require the defendants to specifically perform in accordance with alleged contractual obligations under a document entitled, "Agreement of Assignment, Release and Extension of Time for Closing" (the Basic Contract), dated October 8, 1973, together with an Addendum allegedly executed contemporaneously therewith.

Klutts Resort Realty, Inc., (Klutts), is the owner of the land in question. Originally, Klutts had contracted to sell the property to its present co-plaintiffs, namely, Advance Corporation, Smith-Williams & Associates, Inc., John W. Ahern, John A. Scarborough, and Thaddeus E. Williams (hereinafter the "other plaintiffs"). Thereafter, it became apparent that this proposed sale could not be consummated because of the inability of one or more of the intended purchasers to perform. Eventually, Down'Round Development Corporation (Down'Round) expressed an interest in being substituted as purchaser of the property. After extensive negotiations among the various parties, it was agreed that the transaction would be formalized in one document known herein as the Basic Contract. Under this Contract, Down'Round agreed to purchase the property from Klutts for a consideration of $386.120.00, and Down'Round consented

to pay to the "other plaintiffs" the sum of $106,950.00 as consideration for the assignment to it of their contractual rights to purchase the property. The consideration for the assignment could be paid either in cash or by a short-term promissory note, provided that the note were personally guaranteed by the endorsements of all the stockholders and directors of Down'Round. The defendants elected to pay by note rather than pay cash.

Evidence presented by the plaintiffs at the trial shows that on or about October 7, 1973, Welbourne Bradham, an officer of Klutts, discussed the Basic Contract with Patrick H. Grayson, Jr., attorney for Down'Round, and expressed certain reservations about the contents of the Contract. On October 7, Bradham met with Thaddeus E. Williams, one of the plaintiffs, and with three of the individual defendants at a Columbia restaurant. At the meeting the proposed Basic Contract and Addendum were reviewed. Bradham testified that while the agreement, as then constituted, provided for an individual guarantee to the "other plaintiffs" of the promissory note by the stockholder-directors of Down'Round (who are the named individual defendants in this action), it did not provide for an individual guarantee of the obligation to pay the purchase price of the real estate to Klutts. Bradham therefore inserted with ballpoint pen the words "individually by" before four of the signature lines on the Addendum. For some unexplained reason, however, these words were not added opposite the line where the defendant Charles Larsen subsequently signed his name. Bradham then executed the Basic Contract and the Addendum on behalf of Klutts. It was agreed that the other parties would execute the documents at a later date after studying them. The time set for closing the transaction was extended until December 1, 1973.

On or about November 9, 1973, Bradham and another officer of Klutts met with three of the individual defendants at the office of B. C. Inabinet, Jr., Chairman of the Board of

Directors of Down'Round. Bradham testified that during the course of this meeting, he and the other Klutts representative reviewed the Basic Contract, as well as the Addendum attached thereto, and determined that both of these documents had been executed by all the parties involved in the transaction. Thereafter, the parties recessed for lunch. Upon returning it was discovered that the Addendum had disappeared. This document remained unaccounted for until it turned up in the possession of one of the defendants on the day preceding the start of the trial.

Subsequently, the attorney for the "other plaintiffs" delivered certain documents to the plaintiff Williams for the purpose of circulating same for approval by all of the parties. Thereafter, Williams' attorney learned through his client that Down'Round, through its chairman, had advised Williams that Down'Round would not complete the transaction. Williams' lawyer contacted counsel for the defendant corporation in order to determine what impediments there were to the closing. Williams' attorney was advised that Down'Round did not intend to close the transaction because, in the opinion of the individual defendants, the plaintiffs had, in effect, proposed a counter-offer by requesting the individual defendants to sign a "Guaranty of Contract". This instrument, in clear language, would have bound the individual defendants personally on the contractual obligations of their corporation if Down'Round defaulted. It was explained to their counsel that the proposed Guaranty was not a counter-offer but was one of the contemplated closing documents circulated for approval. The defendants were, however, unwilling to sign this document and refused to do so. By Order dated December 10, 1975, the trial judge ruled in favor of the plaintiffs and decreed that specific performance be granted against all the defendants. From this Order the defendants appeal.

We consider first the question of whether the defendants are individually liable to the "other plaintiffs" on the prom-

issory note. The language of the Basic Contract pertinent to the note is the following:

"1. Advance, Smith-Williams & Associates, John W. Ahern, John A. Scarborough and Thaddeus E. Williams agree to assign all their right, title and interests in and to the above-described 13.79 acres, if any, and in and to that certain contract of Sale set forth in Exhibits A and B hereof, as their interests may appear, to Down'Round for and in consideration of the payment to them of One Hundred Six Thousand, Nine Hundred-Fifty and no/100 ($106,950.00) Dollars to be divided among them as they may determine, and Down'Round hereby agrees to accept the assignment as aforesaid and pay the said consideration . . .. *It is understood and agreed that the consideration ($106,-950.00) for the assignment agreed to herein may be paid by a Promissory Note of Down'Round endorsed and guaranteed by all of its stockholders, individually, to be due and payable December 1, 1973 . . ..*" (Emphasis added.)

Although there is a dispute as to whether the defendants ever actually executed and delivered the promissory note, the trial judge found, on the basis of the evidence presented, that the note was executed and delivered in conformity with the terms of the Basic Contract quoted above. The Basic Contract was signed by each of the five individual defendants in a corporate capacity. However, it contained a promise of individual guaranty with respect to the promissory note. In such a case a contract signed by an individual as an officer has been held to be the contract of the officer where the contract contains a provision with respect to individual liability of the signing officer.[1] 19 Am. Jur. (2d), Corporations § 1343 (1965). A director, officer,

---

[1] See *Steele v. Hallandale. Inc.* (Fla. App.), 125 So. (2d) 587 (1960), holding that under a contract for the sale of corporate property containing a provision that the undersigned corporate officers agreed to indemnify the purchasers from making any payments on a mortgage on the property and which was signed by an individual as president of the corporation, the president of the corporation could be held individually liable on the agreement to indemnify.

or other agent, signing a corporate contract containing a promise in the proper form for an individual, is not relieved from personal liability by the addition to his name of terms such as "director", "president" or the like. These terms are regarded merely as *descriptio personae,* that is, a term descriptive of the person rather than the relationship in which he signs the agreement. *Id.,* § 1344.

From the terms of the Basic Contract, it is clear that all of the parties intended that the individual defendants should guarantee due performance of the promissory note if executed and delivered in lieu of paying cash for the assignment. There is evidence that the individual defendants did in fact execute and deliver a note in conformity with the requirements of the Basic Contract. The trial judge committed no error in decreeing that all of the individual defendants should be compelled to satisfy the obligation under the note.

Next, we turn our attention to the question of whether the individual defendants extended their personal liability by signing the Addendum to the Basic Contract.

The general rule is that, in the absence of anything indicating a contrary intention, where instruments are executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, the courts will consider and construe the instruments together. The theory is that the instruments are effectively one instrument or contract. Moreover, where the instruments have not been executed simultaneously but relate to the same subject matter and have been entered into by the same parties, the transaction comprising the contract will be considered as a whole. This is true even though the transaction consumed more than one day; the date of the writings constituting such transaction is immaterial. Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they

will be given effect between the parties so that the whole agreement as actually made may be effectuated. 17 Am. Jur. (2d), Contracts § 264 (1974).

Moreover, it is the general rule that parol evidence is admissible to show the true meaning of an ambiguous written contract. Such a contract is one capable of being understood in more ways than just one, or an agreement unclear in meaning because it expresses its purpose in an indefinite manner. The purpose of all rules of contract construction is to determine the parties' intention. The courts, in attempting to ascertain this intention, will endeavor to determine the situation of the parties, as well as their purposes, at the time the contract was entered into. *Bruce v. Blalock,* 241 S. C. 155, 127 S. E. (2d) 439 (1962). The court should put itself, as best it can, in the same position occupied by the parties when they made the contract. In doing so, the court is able to avail itself of the same light which the parties possessed when the agreement was entered into so that it may judge the meaning of the words and the correct application of the language. 17 Am. Jur. (2d), Contracts § 272 (1964).

All parties agree that the intention of the parties is the key to determining whether the signatures of the individual defendants on the Addendum were meant to bind them personally on Down'Round's obligation to pay the purchase price of the land to Klutts. The defendants contend that there was no intention on their part, by signing their names next to the words "individually by", to extend their personal liability. They further assert that the words "individually by" were inserted surreptitiously by Bradham. The plaintiffs, on the other hand, argue that Bradham advised the defendants that he wanted a promise of individual liability for Klutts, similar to the kind the defendants had given the "other plaintiffs" with regard to the promissory note. Klutts felt that Down'Round was a "paper corporation" and, as such, would likely be unable to pay the purchase price. Therefore, Klutts desired to ensure the per-

formance of the contractual obligation of Down'Round by inserting the words "individually by" opposite the lines for the signatures of the individual defendants. The evidence presented by the plaintiffs was to the effect that the named defendants signed the Addendum with notice and knowledge of the presence of the words "individually by" and that, in so signing, they intended to bind themselves personally in order that the transaction might be effectuated. The trial judge found from the evidence that the Basic Contract and the Addendum embraced the whole contractual obligation. We conclude that the documents, when considered together, manifest the intention that the defendants would personally guarantee Down'Round's obligation to Klutts. Despite the fact that Charles Larsen, president of Down'Round, did not sign opposite the words "individually by", the parol testimony supports the finding that his signature, followed by the four others in the manner described hereinabove, evidenced his intention to personally guarantee the purchase price.

The individual defendants contend further that the Addendum did not impose any personal obligation on them because they signed it in a corporate capacity by adding their offices next to their signatures. They assert that the word "by" is inconsistent with the word "individually", because "by" always denotes a corporate signature only. However, because the presence of the words "individually by" created an ambiguity, the court was warranted in considering other evidence, including parol testimony, to determine what the parties intended by the signatures on the Addendum. 19 Am. Jur. (2d), Corporations §§ 1342 and 1343 (1965). The trial judge concluded from the evidence that the words "individually by" were intended to make the defendants personal guarantors. To relieve the signer personally it must appear from the whole instrument or competent testimony, where parol evidence is admissible, that the instrument was intended to be the contract of the principal and not that of the agent. *J. L. Mott Iron Works v. Clark,* 87 S. C. 199, 69 S. E. 227 (1910).

Since there is a dispute in the evidence presented by each side as to the intention of the parties in this case, the issue of credibility of the witnesses necessarily must play an important role in a determination of the facts. The Supreme Court's duty in equity cases to review challenged findings of fact as well as matters of law does not require this Court to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position than this Court to evaluate their credibility. *Inabinet v. Inabinet,* 236 S. C. 52, 113 S. E. (2d) 66 (1960) ; *Twitty v. Harrison,* 230 S. C. 174, 94 S. E. (2d) 879 (1956). We conclude that the trial court's findings of fact are supported by the preponderance of the evidence.

We deem without merit the defendants' additional contentiton that the "Guaranty of Contract" amounted to a counter-offer which justified the defendants' refusal to go through with the transaction. Since we have concluded that the plaintiffs are correct in their assertion that the Basic Contract and the Addendum required the individual guarantee of the stockholder-directors of the defendant corporation, the Guaranty of Contract did not constitute a counter-offer but was in conformity with the entire Contract.

We affirm the court's Order and hold that in the event that the defendants fail to comply with the Order of the trial judge, the plaintiffs may apply to the circuit court for such additional relief as may be necessary to execute the court's judgment.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.