# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The Estate of Mary Solesbee, by her personal representative, Connie Bayne, Respondent,

v.

Fundamental Clinical and Operational Services, LLC; Fundamental Administrative Services, LLC; THI of South Carolina at Magnolia Manor-Inman, LLC d/b/a Magnolia Manor-Inman; Inpatient Consultants of North Carolina, P.C.; and Angela Brown, ACNP, Defendants,

Of which Fundamental Clinical and Operational Services, LLC; Fundamental Administrative Services, LLC; and THI of South Carolina at Magnolia Manor-Inman, LLC d/b/a Magnolia Manor-Inman are the Appellants.

Appellate Case No. 2019-001731

―――――――――

Appeal From Spartanburg County
Grace Gilchrist Knie, Circuit Court Judge

―――――――――

Opinion No. 5963
Submitted October 3, 2022 – Filed January 25, 2023

―――――――――

**AFFIRMED**

―――――――――

Stephen Lynwood Brown, Russell Grainger Hines, Donald Jay Davis, Jr., and Gaillard Townsend Dotterer, III, all of Clement Rivers, LLP, of Charleston, for Appellants.

Warren H. Christian, Jr., and Matthew W. Christian, both of Christian & Christian, LLC, of Greenville, and Jordan Christopher Calloway, of McGowan Hood Felder & Phillips, of Rock Hill, all for Respondent.

---

**THOMAS, J.:**  In this wrongful death and survival action alleging nursing home negligence, Fundamental Clinical and Operational Services, LLC; Fundamental Administrative Services, LLC; and THI of South Carolina at Magnolia Manor-Inman, LLC d/b/a Magnolia Manor-Inman[1] (collectively, Appellants) appeal the trial court's denial of Magnolia's motion to compel arbitration.  Appellants argue the trial court erred in (1) denying Magnolia's motion to compel arbitration and (2) denying Fundamental's[2] motions to stay this lawsuit pending arbitration of the claims against Magnolia.  We affirm.

**FACTS**

Magnolia operates a nursing facility located in Spartanburg County.  Mary Solesbee became a resident at Magnolia on June 27, 2016.  She was admitted to Magnolia by her son, Allen Dover, who executed the paperwork for her admission.[3]  Among the contracts Dover entered into on behalf of Solesbee were an admission agreement (Admission Agreement) and an arbitration agreement (Arbitration Agreement).  Solesbee was not present when Dover signed the documents.

The Admission Agreement governs the type of care Solesbee was to receive at Magnolia and Solesbee's financial obligation to pay for those services.  On the Admission Agreement's final page, there is an "Entire Agreement" section indicating the twelve pages of the Agreement constitute "the entire agreement and understanding between the parties" concerning Solesbee's admission to Magnolia.

---

[1]  Appellant THI of South Carolina at Magnolia Manor-Inman, LLC, d/b/a Magnolia Manor-Inman (Magnolia) is a skilled nursing facility in Spartanburg County.

[2]  Appellants Fundamental Clinical and Operational Services, LLC and Fundamental Administrative Services, LLC (collectively, Fundamental) are "affiliated and/or parent and/or subsidiary entities" to Magnolia.

[3]  Solesbee had given Dover a general power of attorney.  However, Solesbee revoked the power of attorney a few months later, which was more than two years before her admission to Magnolia.

The Admission Agreement does not mention the Arbitration Agreement. Dover signed the Admission Agreement on the "Signature of Representative" line. Magnolia's representative did not ask Dover for proof of authority to act on Solesbee's behalf.[4]

The separate one-page Arbitration Agreement states:

> It is further understood that in the event of any controversy or dispute between the parties arising out of or relating to Facility's Admission Agreement, or breach thereof, or relating in any way to Resident's stay at Facility, or to the provisions of care or services to Resident, including but not limited to any alleged tort, personal injury, negligence or other claim; or any federal or state statutory or regulatory claim of any kind; or whether or not there has been a violation of any right or rights granted under State law (collectively "Disputes"), and the parties are unable to resolve such through negotiation, then the parties agree that such Dispute(s) shall be resolved by arbitration, as provided by the South Carolina Alternate Dispute Resolution/Mediation Rules.

The Arbitration Agreement further states that "[b]y his/her signature below, the executing party represents that he/she has the authority to sign on Resident's behalf so as to bind the Resident as well as the Representative." Dover signed the Arbitration Agreement on the line labeled "Resident/Representative Signature."

On July 14, 2016, two weeks after her admission, Solesbee was transported to a hospital and died on August 1, 2016. Connie Bayne, as the personal representative for Solesbee's estate,[5] filed a wrongful death and survival action against Appellants alleging nursing home negligence.[6] The complaint alleged Solesbee's death was "a direct and proximate result of . . . sepsis resulting from [an] improperly treated leg wound and infection" that was not properly recognized and treated while she was a

---

[4] In its brief, Magnolia acknowledges it was unable to establish agency, either actual or apparent, on the part of Dover because there was no power of attorney or any other documents.

[5] Bayne is Solesbee's daughter.

[6] Bayne filed an amended complaint on January 3, 2019, and a second amended complaint on February 27, 2019.

resident of Magnolia.  It sought judgment against Appellants for actual and punitive damages.

Based on the Arbitration Agreement Dover signed for Solesbee, Magnolia filed a motion to dismiss Bayne's complaint, compel arbitration, and stay proceedings pending the outcome of arbitration.  Fundamental filed motions to stay any requirement to file further responsive pleadings, as well as any requirement to respond to any motions or discovery filed or served by Bayne, until such time as this court made a final decision on the validity of the arbitration agreement. Magnolia filed a memorandum in support of its motion.

After a hearing, the court denied Magnolia's motion to compel arbitration.  In its order, the court found Dover did not have the actual or apparent authority to sign the Arbitration Agreement on behalf of Solesbee.  The court stated this case was very similar to *Coleman v. Mariner Health Care, Inc.*, 407 S.C. 346, 755 S.E.2d 450 (2014); *Hodge v. UniHealth Post-Acute Care of Bamberg, LLC*, 422 S.C. 544, 813 S.E.2d 292 (Ct. App. 2018); and *Thompson v. Pruitt Corporation*, 416 S.C. 43, 784 S.E.2d 679 (Ct. App. 2016).  The court noted that in these cases, our appellate courts found: (1) the arbitration agreements to be unenforceable when a family member signed an arbitration agreement near the time of admission to a skilled nursing facility for the decedent and did not have any actual authority; (2) that no implied authority existed; and (3) no estoppel applied.  As the *Thompson* and *Hodge* courts noted, there was no evidence the resident being admitted to the nursing home took any action to create an agency relationship with the person who signed the arbitration agreement.  *See Thompson*, 416 S.C. at 55, 784 S.E.2d at 686 ("[T]he authority conveyed by a principal to an agent to handle finances or make health care decisions does not encompass executing an agreement to resolve legal claims by arbitration, thereby waiving the principal's right of access to the courts and to a jury trial."); *Hodge*, 422 S.C. at 572, 813 S.E.2d at 307 (quoting *Thompson*).  The court stated this case was nearly identical to those cases. Therefore, the court held there was no valid Arbitration Agreement in this case. The court also held that even if the Arbitration Agreement was generally valid, it could not be enforced for the wrongful death claim brought for the benefit of Solesbee's statutory beneficiaries.  Further, the court rejected Magnolia's request for leave to conduct discovery before the court ruled on its motion, finding it had the opportunity to use the South Carolina Rules of Civil Procedure to conduct discovery related to arbitration.  This appeal followed.

**STANDARD OF REVIEW**

"The question of the arbitrability of a claim is an issue for judicial determination, unless the parties provide otherwise." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001). An "[a]ppeal from the denial of a motion to compel arbitration is subject to de novo review." *New Hope Missionary Baptist Church v. Paragon Builders*, 379 S.C. 620, 625, 667 S.E.2d 1, 3 (Ct. App. 2008). Also, "[w]hether an arbitration agreement may be enforced against a nonsignatory to the agreement is a matter subject to de novo review by an appellate court." *Wilson v. Willis*, 426 S.C. 326, 335, 827 S.E.2d 167, 172 (2019). Under this standard of review, "a [trial] court's factual findings will not be reversed on appeal if any evidence reasonably supports those findings." *Id.*

**LAW/ANALYSIS**

**I.     Motion to Compel Arbitration**

Appellants argue the trial court erred in denying Magnolia's motion to compel arbitration. We disagree.

South Carolina's policy is to favor arbitration of disputes. *Zabinski*, 346 S.C. at 596, 553 S.E.2d at 118. "Arbitration agreements, like other contracts, are enforceable in accordance with their terms." *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 539, 542 S.E.2d 360, 364 (2001). "To decide whether an arbitration agreement encompasses a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the broad arbitration clause, regardless of the label assigned to the claim." *Zabinski*, 346 S.C. at 597, 553 S.E.2d at 118. "Unless a court can say with positive assurance that an arbitration clause is not susceptible to any interpretation that covers the dispute, arbitration should generally be ordered." *Gissel v. Hart*, 382 S.C. 235, 240-41, 676 S.E.2d 320, 323 (2009). "A broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." *Zabinski*, 346 S.C. at 598, 553 S.E.2d at 119 (quoting *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001)).

"However, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Gissel*, 382 S.C. at 241, 676 S.E.2d at 323. "[T]he presumption in favor of arbitration applies to the scope of an arbitration agreement; it does not apply to the existence of such

an agreement or to the identity of the parties who may be bound to such an agreement." *Wilson*, 426 S.C. at 337, 827 S.E.2d at 173 (emphasis omitted) (quoting *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 496 (Tex. App. 2011)). "[B]ecause arbitration, while favored, exists solely by agreement of the parties, a presumption against arbitration arises where the party resisting arbitration is a nonsignatory to the written agreement to arbitrate." *Id.* at 337-38, 827 S.E.2d at 173 (emphasis omitted). Nevertheless, "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Pearson v. Hilton Head Hosp.*, 400 S.C. 281, 288, 733 S.E.2d 597, 600 (Ct. App. 2012) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000)).

"Whether an arbitration agreement may be enforced against nonsignatories, and under what circumstances, is an issue controlled by state law." *Wilson*, 426 S.C. at 338, 827 S.E.2d at 173-74. "South Carolina has recognized several theories that could bind nonsignatories to arbitration agreements under general principles of contract and agency law, including (1) incorporation by reference, (2) assumption, (3) agency, (4) veil piercing/alter ego, and (5) estoppel." *Id.* at 338, 827 S.E.2d at 174. This court has held the theory of equitable estoppel precludes parties from asserting their nonsignatory status, compelling them to submit their claims to arbitration. *Id.* at 339, 827 S.E.2d at 174. Under this theory, "[a] nonsignatory is estopped from refusing to comply with an arbitration clause 'when it receives a direct benefit from a contract containing an arbitration clause.'" *Pearson*, 400 S.C. at 290, 733 S.E.2d at 601 (quoting *Int'l Paper*, 206 F.3d at 418). "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Id.* (emphasis omitted) (quoting *Int'l Paper*, 206 F.3d at 418).

Magnolia argues the trial court should have found the Arbitration Agreement merged with the Admission Agreement because merger is presumed when the instruments in question are executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction.

In *Coleman v. Mariner Health Care, Inc.*, our supreme court held:

> In South Carolina, "[t]he general rule is that, in the
> absence of anything indicating a contrary intention,

> where instruments are executed at the same time, by the
> same parties, for the same purpose, and in the course of
> the same transaction, the courts will consider and
> construe the documents together. The theory is that the
> instruments are effectively one instrument or contract."

407 S.C. at 355, 755 S.E.2d at 455 (quoting *Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.*, 268 S.C. 80, 88, 232 S.E.2d 20, 24 (1977)). The *Coleman* court found the documents in that case were executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction; thus, unless there was a contrary intention, there was a merger. *Id.* However, the court determined that "[b]y their own terms, the contracts between these parties indicated an intent that the common law doctrine of merger not apply." *Id.* And, even if a clause in the contract created an ambiguity as to merger, the law is clear that any ambiguity in such a clause is construed against the drafter. *Id.* at 355-56, 755 S.E.2d at 455. Thus, there was no merger in that case, and the appellants' equitable estoppel argument was properly denied. *Id.* at 356, 755 S.E.2d at 455.

Also, in *Hodge v. UniHealth Post-Acute Care of Bamberg, LLC*, this court held the admission agreement and arbitration agreement did not merge because: (1) the admission agreement indicated it was governed by South Carolina law, whereas the arbitration agreement stated it was governed by federal law; (2) like in *Coleman*, the arbitration agreement recognized the two documents were separate, stating "[a]ny and all claims or controversies arising out of or in any way relating to this Agreement or the Patient/Resident's Admission Agreement"; (3) the arbitration agreement stated it could be revoked within thirty days, whereas the admission agreement contained no such indication and instead provided the admission agreement could only be amended; (4) each document was separately paginated and had its own signature page; and (5) the arbitration agreement stated signing it was not a precondition to admission. 422 S.C. at 562-63, 813 S.E.2d at 302.

Here, the Admission Agreement provides it is governed by South Carolina law, and the Arbitration Agreement provides it is governed by federal law. The Arbitration Agreement recognized the two documents were separate, stating the Arbitration Agreement "shall survive any termination or breach of this Agreement or the Admission Agreement." The Arbitration Agreement is silent as to whether it could be revoked, but the Admission Agreement provides, "Resident and/or his/her legal representative may terminate this Agreement at any time, upon written notice

to Facility."  The Admission Agreement and Arbitration Agreement were separately paginated and had their own signature pages.  Magnolia's attorney admitted at the hearing that "[i]t's perfectly true that [Dover] did not have to sign the arbitration agreement to move forward with [Solesbee] being admitted.  It was voluntary . . . ."  Thus, like the *Coleman* and *Hodge* courts, we find there was no merger in this case and Magnolia's equitable estoppel argument was properly denied.

The *Coleman* court also considered whether the Adult Health Care Consent Act (Act)[7] gave a family member authority to execute an arbitration agreement on behalf of another.  The court held:

> The scope of Sister's authority [under the Act] to consent to "decisions concerning Decedent's health care" extended to the admission agreement, which was the basis upon which Facility agreed to provide health care and Sister agreed to pay for it.  The separate arbitration agreement concerned neither health care nor payment, but instead provided an optional method for dispute resolution between Facility and Decedent or Sister should issues arise in the future.  Under the Act, Sister did not have the capacity to bind Decedent to this voluntary arbitration agreement.  We therefore affirm the circuit court's holding that the Act did not confer authority on Sister to execute a document which involved neither health care nor financial terms for payment of such care.

407 S.C. at 353-54, 755 S.E.2d at 454.  In *Thompson v. Pruitt Corporation*, this court also held the admission agreement did not merge with the arbitration agreement and the son's authority under the Act to execute the admission agreement did not cover the terms of the arbitration agreement.  416 S.C. at 52-53, 784 S.E.2d at 684-85.

A limited general agreement power of attorney was executed on September 2, 2014, by Solesbee, giving Dover power of attorney for certain limited acts and alternatively giving power of attorney to Bayne.  However, Solesbee revoked the

---

[7] S.C. Code Ann. § 44-66-30 (Supp. 2022) (providing that when a patient is unable to consent, decisions concerning their health care may be made by other persons, as specified in the statute).

power of attorney on September 12, 2014, which was almost two years before Dover signed the Agreements in this case. Thus, according to Bayne, Dover had no authority to sign the Arbitration Agreement on Solesbee's behalf. However, Bayne asserted Dover did have the authority to sign the Admission Agreement under the Act. Bayne argues the Act is limited to "health care" decisions and provides no authority for separate contracts like the Arbitration Agreement. She asserts the Act was never meant to affect anything other than health care decisions and the Arbitration Agreement was not a health care decision because Solesbee could get the health care services covered in the Admission Agreement without agreeing to arbitrate. We agree and find Dover did not have any authority to sign the Arbitration Agreement for Solesbee via the Act or a power of attorney.

Magnolia further asserts that because Solesbee was bound by the Arbitration Agreement at the time of her death, her wrongful death beneficiaries are bound by the Arbitration Agreement as well. However, we previously found the Arbitration Agreement is not enforceable against Solesbee because she did not sign it or authorize Dover to sign it for her; thus, Solesbee's cause of action was not barred at the time of her death.

Finally, Magnolia asserts the trial court erred in denying its request to conduct discovery on the issue of arbitrability. The trial court held "[Magnolia] had the opportunity to use the South Carolina Rules of Civil Procedure to conduct discovery related to arbitration." Magnolia cites no authority for how it claims the court erred, and the record does not contain any discovery requests Bayne ignored or any subpoenas to which she objected. Magnolia states the discovery it seeks is whether an agency relationship exists (or whether the facts to support estoppel or ratification exist) and whether Solesbee was competent at the time of her admission. It also asserts there was ambiguity as to whether Solesbee gave consent for Dover to act as her agent, given the inconsistency between Dover's representation of authority in the Arbitration Agreement and his disavowal of such authority in his affidavit.

In *Hodge*, this court addressed a similar argument and affirmed the trial court's refusal to compel the husband's deposition that would add nothing probative to a potential agency analysis, noting this court has held "the authority conveyed by a principal to an agent to handle finances or make health care decisions does not encompass executing an agreement to resolve legal claims by arbitration, thereby waiving the principal's right of access to the courts and to a jury trial." 422 S.C. at 579, 813 S.E.2d at 311 (quoting *Thompson*, 416 S.C. at 55, 784 S.E.2d at 686). Because we find the trial court correctly held there was no merger of the

Agreements and Magnolia's equitable estoppel argument was properly denied, we also find the court did not err in denying its request for further discovery when it would not have changed the result.

## II.     Motions to Stay

Appellants argue the trial court erred in denying Fundamental's motions to stay the lawsuit pending arbitration of the claims against Magnolia.  Because we find the trial court did not err in denying Magnolia's motion to compel arbitration, Fundamental's motions are moot and we need not address this issue.  *See Hagood v. Sommerville*, 362 S.C. 191, 199, 607 S.E.2d 707, 711 (2005) (declining to address an issue when the resolution of a prior issue is dispositive).

## CONCLUSION

Accordingly, the decision of the trial court is

## AFFIRMED.[8]

## WILLIAMS, C.J., and LOCKEMY, A.J., concur.

---

[8] We decide this case without oral argument pursuant to Rule 215, SCACR.