**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Kenneth Pace, Individually and as Personal Representative of the Estate of Earl E. Pace, Respondent,

v.

Lake Emory Post Acute Care; THI of South Carolina at Camp Care, LLC; THI of South Carolina LLC; THI of Baltimore, Inc.; Fundamental Administrative Services, LLC; Fundamental Clinical and Operational Services, LLC; Fundamental Clinical Consulting, LLC; Fundamental Long Term Care Holdings, LLC; and Kerry L. Wheeler, D.O., Defendants,

Of which Lake Emory Post Acute Care; THI of South Carolina at Camp Care, LLC; THI of South Carolina LLC; THI of Baltimore, Inc.; Fundamental Administrative Services, LLC; Fundamental Clinical and Operational Services, LLC; Fundamental Clinical Consulting, LLC; Fundamental Long Term Care Holdings, LLC, are Appellants.

Appellate Case No. 2022-001059

———————

Appeal From Spartanburg County
R. Keith Kelly, Circuit Court Judge

———————

Unpublished Opinion No. 2024-UP-261
Submitted June 1, 2024 – Filed July 17, 2024

———————

**AFFIRMED**

---

Stephen Lynwood Brown, Donald Jay Davis, Jr., Russell Grainger Hines, Ted Ashton Phillips, III, all of Clement Rivers, LLP, of Charleston, for Appellants.

Jennifer Spragins Burnett and Anthony Lee Harbin, both of Harbin & Burnett, LLP, of Anderson, for Respondent.

---

**PER CURIAM:** This case arose from a wrongful death and survival action alleging nursing home negligence. The Facility[1] argues the circuit court erred in denying its Motion to Compel Arbitration and the Other Appellants'[2] Motions to Stay. We affirm.

**FACTS**

In July 2014, Earl E. Pace (Mr. Pace) was placed into the protective custody of the South Carolina Department of Social Services (DSS) as a vulnerable adult. The family court appointed a Guardian *ad Litem* (GAL) and an attorney to represent Mr. Pace. In January 2015, while under DSS custody, Mr. Pace was admitted to Lake Emory. A DSS employee, Calvin Hill, executed Mr. Pace's entry paperwork for Lake Emory, which included an Admission Agreement and a separate Arbitration Agreement. Subsequently, DSS petitioned the court to be relieved of custody and recommended Lake Emory designate Mr. Pace's son, Kenneth Pace[3], as representative. DSS, with the consent of the GAL, the attorney for the GAL,

---

[1] "The Facility" refers to Defendant/Appellant Lake Emory Post Acute Care (Lake Emory) and Defendant/Appellant THI of South Carolina at Camp Care, LLC (Camp Care), collectively. Lake Emory is the name under which Camp Care does business as a skilled nursing facility in Spartanburg County.

[2] The "Other Appellants" refers to Defendants/Appellants THI of South Carolina, LLC; THI of Baltimore, Inc.; Fundamental Administrative Services, LLC; Fundamental Clinical and Operational Services, LLC; and Fundamental Long Term Care Holdings, LLC, collectively. The Facility and the Other Appellants are referred to collectively as "Appellants."

[3] Kenneth Pace is the Plaintiff/Respondent in this case as Personal Representative of the Estate of Mr. Pace.

and Mr. Pace's court appointed attorney submitted a consent order seeking to relieve DSS of custody of Mr. Pace, thus, relieving the GAL and court appointed attorneys.  The Laurens County Family Court entered an Order on April 24, 2015 relieving (1) DSS of custody, (2) the GAL, (3) the attorney appointed for the GAL and (4) the attorney appointed for Mr. Pace.

Kenneth filed a Survival and Wrongful Death Action on October 21, 2019.  The action claimed the Facility administered unnecessary blood sugar medication that led to Mr. Pace's diagnosis of hypoglycemic encephalopathy and subsequent death.  The Facility filed a Motion to Dismiss and Compel Arbitration on April 13, 2020, alleging it was entitled to compel this matter to arbitration pursuant to the Arbitration Agreement.  The Facility also sought a stay of the proceedings.  The Facility asserted Mr. Hill was acting pursuant to "court ordered powers" and DSS had the authority to execute an arbitration agreement on behalf of an individual in its custody pursuant to South Carolina Code Section 43-35-10 (2015).  The Other Appellants subsequently filed Motions to Stay the proceedings.  The circuit court denied the motions, and this appeal followed.[4]

## STANDARD OF REVIEW

Unless the parties otherwise provide, the question of the arbitrability of a claim is an issue for judicial determination.  *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001).  Appeal from the denial of a motion to compel arbitration is subject to de novo review.  *Chassereau v. Global Sun Pools, Inc.*, 373 S.C. 168, 171, 644 S.E.2d 718, 720 (2007).  Also, "[w]hether an arbitration agreement may be enforced against a nonsignatory to the agreement is a matter subject to de novo review by an appellate court."  *Wilson v. Willis*, 426 S.C. 326, 335, 827 S.E.2d 167, 172 (2019).  Under this standard of review, "a circuit court's

---

[4] We acknowledge certain facts of this case differ from our previous, recent line of cases.  Prior to this case, this court has dealt with <u>family members</u> executing admission and arbitration agreements on behalf of the nursing home resident.  Here, a DSS caseworker signed on behalf of the resident.  *See Estate of Solesbee by Bayne v. Fundamental Clinical and Operational Services, LLC*, 438 S.C. 638, 648, 885 S.E.2d 144, 149 (Ct. App. 2023), *reh'g denied* (Apr. 14, 2023), *cert. denied* (Apr. 16, 2024) ; *Coleman v. Mariner Health Care, Inc.*, 407 S.C. 346, 755 S.E.2d 450 (2014); *Hodge v. UniHealth Post-Acute Care of Bamberg, LLC*, 422 S.C. 544, 813 S.E.2d 292 (Ct. App. 2018); and *Thompson v. Pruitt Corp.*, 416 S.C. 43, 784 S.E.2d 679 (Ct. App. 2016)).

factual findings will not be reversed on appeal if any evidence reasonably supports those findings." *Id.*

## LAW/ANALYSIS

### I.     The Facility's Motion to Compel

Appellants argue the circuit court erred in denying the Facility's Motion to Compel Arbitration.

Our supreme court recently addressed the circuit court's denial of a Motion to Compel Arbitration in *Sanders v. Savannah Highway Automotive Co.:*

> We review this issue de novo.  *See Chassereau v. Global-Sun Pools, Inc.*, 363 S.C. 628, 631, 611 S.E.2d 305, 307 (Ct. App. 2005) ("Appeal from the denial of a motion to compel arbitration is subject to de novo review.").  However, we must honor the factual findings of the circuit court pertinent to its arbitration ruling if those findings are reasonably supported by evidence in the record.  *Partain v. Upstate Auto. Grp.*, 386 S.C. 488, 491, 689 S.E.2d 602, 603 (2010).  We recently addressed the notion that the law "favors" arbitration in *Palmetto Construction Group, LLC v. Restoration Specialists, LLC*, 432 S.C. 633, 856 S.E.2d 150 (2021).  We noted: "[O]ur statements that the law 'favors' arbitration mean simply that courts must respect and enforce a contractual provision to arbitrate as [they] respect[ ] and enforce[ ] all contractual provisions.  There is, however, no public policy—federal or state—'favoring' arbitration." *Id.* at 639, 856 S.E.2d at 153.

440 S.C. 377, 382, 892 S.E.2d 112, 114 (2023), *reh'g denied* (Sept. 27, 2023).

"Arbitration agreements, like other contracts, are enforceable in accordance with their terms."  *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 539, 542 S.E.2d 360, 364 (2001) (citing *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989)).  "To decide whether an arbitration agreement encompasses a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the broad arbitration clause, regardless

of the label assigned to the claim." *Zabinski*, 346 S.C. at 597, 553 S.E.2d at 118 (citation omitted). "A 'broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained.'" *Id.* at 598, 553 S.E.2d at 119 (quoting *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001)).

## A.    Authority to Sign[5]

Appellants argue Mr. Hill had authority to sign on behalf of Mr. Pace under the Adult Protection Act.

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Gissel*, 382 S.C. at 241, 676 S.E.2d at 323. "Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Pearson v. Hilton Head Hosp.*, 400 S.C. 281, 288, 733 S.E.2d 597, 600 (Ct. App. 2012) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000)). "Whether an arbitration agreement may be enforced against nonsignatories, and under what circumstances, is an issue controlled by state law." *Wilson*, 426 S.C. at 338, 827 S.E.2d at 173-74. "South Carolina has recognized several theories that could bind nonsignatories to arbitration agreements under general principles of contract and agency law, including (1) incorporation by reference, (2) assumption, (3) agency, (4) veil piercing/alter ego, and (5) estoppel." *Id*. at 338, 827 S.E.2d at 174. "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Id.* (quoting *Int'l Paper Co.*, 206 F.3d at 418).

---

[5] While South Carolina courts have yet to address a DSS caseworkers' authority to sign on behalf of an incapacitated adult, outside jurisdictions have held that an appointed caseworker does not have the authority to bind the incapacitated adult to arbitration. See Williamson v. Windsor House One, LLC, 712 S.E.2d 745 (N.C. Ct. App. 2011) (finding the text of the Designation of Authority expressly limited the personal representative's authority to consent to release of information forms and administration of medications and treatment; therefore, the representative did not have did not have apparent authority to sign the Dispute Resolution Agreement).

The Facility argues the circuit court's analysis of DSS's authority under the Adult Protection Act is erroneous; therefore, the court should have found Mr. Hill was authorized to execute the Arbitration Agreement on Mr. Pace's behalf.  The Adult Protection Act defines "protective services" as:

> [t]hose services whose objective is to protect a vulnerable adult from harm caused by the vulnerable adult or another.  These services include, but are not limited to, evaluating the need for protective services, securing and coordinating existing services, arranging for living quarters, obtaining financial benefits to which a vulnerable adult is entitled, and securing medical services, supplies, and legal services.

S.C. Code. Ann. § 43-35-10(9) (2015).

The Facility argues "[t]he legislature's deliberate use of this expansive and open-ended language reflects its intent to leave the scope of 'protective services' unrestricted and to broadly empower DSS to exercise its discretion to act for the protection of persons in its custody."   However, we find the plain reading of this provision provides that DSS is expected to arrange for living quarters, secure medical care, and hire an attorney for the vulnerable adult if one is needed.  We do not believe that the statute grants authority for any person employed by DSS to waive a constitutional right of a vulnerable adult.

The circuit court held the Adult Protection Act sets forth the authority and procedure for the State of South Carolina to take a vulnerable adult into custody.  The court held the provisions of the Adult Protection Act would grant authority to DSS to hire a doctor or medical facility for Mr. Pace and would authorize DSS to hire an attorney to provide legal services for Mr. Pace but the statute did not give DSS authority to perform legal services for Mr. Pace nor execute an arbitration agreement that waived the constitutional right to a jury trial.  The circuit court further found the provision of "legal services" did not encompass executing an arbitration agreement or waiving constitutional rights.

This court and our supreme court have found the arbitration agreements to be unenforceable where a family member signed an arbitration agreement near the time of admission to a skilled nursing facility for the decedent and did not have any actual or implied authority.  *See, e.g., Estate of Solesbee by Bayne v. Fundamental*

*Clinical and Operational Services, LLC*, 438 S.C. 638, 648, 885 S.E.2d 144, 149 (Ct. App. 2023), *reh'g denied* (Apr. 14, 2023), *cert. denied* (Apr. 16, 2024); *Coleman v. Mariner Health Care, Inc.*, 407 S.C. 346, 755 S.E.2d 450 (2014); *Hodge v. UniHealth Post-Acute Care of Bamberg, LLC*, 422 S.C. 544, 813 S.E.2d 292 (Ct. App. 2018); and *Thompson v. Pruitt Corp.*, 416 S.C. 43, 784 S.E.2d 679 (Ct. App. 2016)).

Like these cases, we find Mr. Hill did not have the authority to sign on behalf of Mr. Pace.

### B.       Merger and Equitable Estoppel

Appellants argue even if Mr. Hill lacked authority to sign on behalf of Mr. Pace, the Admission Agreement merged with the Arbitration Agreement and Respondent is equitably estopped from denying enforcement of the Arbitration Agreement.

This case is similar to this court's recent case of *Solesbee*.[6]  This court evaluated the merger and equitable estoppel claims in *Solesbee* as compared to prior arbitration cases and found the Admission Agreement and Arbitration Agreement did not merge, and neither the Adult Health Care Consent Act nor limited general agreement power of attorney gave the son in *Solesbee* the authority to sign and bind the nursing home resident to an arbitration agreement.  438 S.C. at 650, 885 S.E.2d at 150.  This court cited to *Coleman*, where our supreme court held:

> In South Carolina, "[t]he general rule is that, in the absence of anything indicating a contrary intention, where instruments are executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, the courts will consider and construe the documents together.  The theory is that the instruments are effectively one instrument or contract."

---

[6] Appellants assert this court's merger analysis in *Solesbee* was erroneous and should not control the disposition of the case.  However, in the same argument, Appellants concede the merger/equitable estoppel argument in *Solesbee* is "substantially the same as the Facility's here."  They further concede the Arbitration Agreement and the Admission Agreement at issue here are the same form documents at issue in *Solesbee*.  In any event, our supreme court denied the Solesbee appellants' petition for a writ of certiorari on April 16, 2024.

407 S.C. at 355, 755 S.E.2d at 455 (quoting *Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.*, 268 S.C. 80, 88, 232 S.E.2d 20, 24 (1977)). The *Coleman* court found the documents in that case were executed at the same time, by the same parties, for the same purposes, and in the course of the same transaction; thus, unless there was a contrary intention, there was a merger. *Id*. However, the court determined that "[b]y their own terms, the contracts between these parties indicated an intent that the common law doctrine of merger not apply." *Id*. And, even if a clause in the contract created an ambiguity as to merger, the law is clear that any ambiguity in such a clause is construed against the drafter. *Id*. at 355-56, 755 S.E.2d at 455. Thus, there was no merger in that case and the appellants' equitable estoppel argument was properly denied. *Id*. at 356, 755 S.E.2d at 455.

In *Hodge*, this court held the admissions agreement and arbitration agreement did not merge because: (1) the admissions agreement indicated it was governed by South Carolina law, whereas the arbitration agreement stated it was governed by federal law; (2) like in *Coleman*, the arbitration agreement recognized the two documents were separate, stating "[a]ny and all claims or controversies arising out of or in any way relating to this Agreement or the Patient/Resident's Admission Agreement"; (3) the arbitration agreement stated it could be revoked within thirty days, whereas the admission agreement contained no such indication and instead provided the admissions agreement could only be amended; (4) each document was separately paginated and had its own signature page; and (5) the arbitration agreement stated signing it was not a precondition to admission. 422 S.C. at 562-63, 813 S.E.2d at 302.

The Facility argues the circuit court should have found the Arbitration Agreement merged with the Admission Agreement and, given Mr. Pace's receipt of direct benefits under the Admission Agreement, Kenneth should be equitably estopped from denying the enforceability of the Arbitration Agreement. For equitable estoppel to apply to the case at hand, there must have been a merger of the Admission Agreement and the Arbitration Agreement. As the *Thompson* and *Hodge* courts noted, there was no evidence the resident being admitted to the nursing home took any action to create an agency relationship for the person who signed the arbitration agreement. *See Thompson*, 416 S.C. at 55, 784 S.E.2d at 686 ("[T]he authority conveyed by a principal to an agent to handle finances or make health care decisions does not encompass executing an agreement to resolve legal claims by arbitration, thereby waiving the principal's right of access to the courts

and to a jury trial."); *Hodge*, 422 S.C. at 572, 813 S.E.2d at 307 (quoting *Thompson*).

Here, the Arbitration Agreement is a completely separate contract under which Mr. Pace derived no benefits.  At a hearing on the matter, counsel for Appellants admitted the following before the circuit court, "There was an arbitration agreement.  Well there's two documents that are essential to our argument.  One is an admission agreement where [Mr. Pace] was admitted to our facility in January of 2015.  The other is an arbitration agreement.  It's a separate document that was signed in conjunction with his admission."  Further, there is no mention of arbitration in the Admission Agreement, and admission to the Facility was not contingent upon execution of the Arbitration Agreement.  Additionally, the Admission Agreement provides it is governed by South Carolina law, while the Arbitration Agreement is governed by federal law.  The Admission Agreement and Arbitration Agreement were separately paginated and had their own signature pages.  Like the *Coleman* and *Hodge* courts held, we find there was no merger in this case and the Facility's equitable estoppel argument was properly denied.

We find there was no merger of the Admission Agreement and the Arbitration agreement; therefore, Respondents are not estopped from denying enforcement of the Arbitration Agreement.

## II.    Other Appellants' Motions to Stay

Because we find the circuit court did not err in denying Appellants' motions to compel arbitration, the underlying motions to stay are moot and we need not address this issue.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address the remaining issues because its resolution of a prior issue was dispositive).

## CONCLUSION

Based on the foregoing, the decision of the circuit court is

**AFFIRMED.**[7]

**THOMAS, MCDONALD and VERDIN, JJ., concur.**

---

[7] We decide this case without oral argument pursuant to Rule 215, SCACR.